966 P.2d 608

**STATE of Hawaiʻi, Plaintiff–Appellee,**

v.

**Rommel TABIGNE, Defendant–Apellant**

**No. 20377.**

Supreme Court of Hawaiʻi.

Sept. 2, 1998.

Jon N. Ikenaga, Deputy Public Defender, on the briefs, for defendant-appellant.

Bryan K. Sano, Deputy Prosecuting Attorney, on the briefs, for the plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

LEVINSON, Justice.

The defendant-appellant Rommel Tabigne appeals from his conviction of and sentence for one count of negligent homicide in the third degree, in violation of Hawai'i Revised Statutes (HRS) § 707–704 (1993).[1] On ap-

---

1. HRS § 707–704 provides:

**Negligent homicide in the third degree.** (1) A person is guilty of the offense of negligent homicide in the third degree if that person causes the death of another person by the operation of a vehicle in a manner which is simple negligence.

(2) "Simple negligence" as used in this section:

(a) A person acts with simple negligence with respect to the person's conduct when the person should be aware of a risk that the person engages in that conduct.

(b) A person acts with simple negligence with respect to attendant circumstances when the person should be aware of a risk that those circumstances exits.

(c) A person acts with simple negligence with respect to a result of the person's conduct when the person should be aware of a risk that the person's conduct will cause that result.

(d) A risk is within the meaning of this subsection if the person's failure to perceive it, considering the nature and purpose of the person's conduct and the circumstances known to the person, involves a deviation from the standard of care that a law-abiding person would observe in the same situation.

(3) Negligent homicide in the third degree is a misdemeanor.

peal, Tabigne argues that the circuit court erred in instructing the jury as to various traffic code provisions because: (1) jurors may not consider the traffic code in determining whether a defendant is criminally negligent; (2) the circuit court failed to instruct the jury, pursuant to Hawai'i Rules of Evidence (HRE) 306 (1993),[2] that it must find the basic facts underlying any inference that the traffic laws had been violated beyond a reasonable doubt; (3) the circuit court failed to instruct the jury that it was required to find a causal connection between the traffic code violation and the accident before considering the traffic code sections; (4) the traffic code instructions amounted to improper judicial comment on the evidence, inasmuch as (a) the circuit court failed to instruct the jury that it should consider any traffic code violations "in light of the defense theories which were presented, mechanical failure or defective freeway design," and (b) the "sheer number of uncharged offenses" may have caused the jury to infer guilt; and (5) the defense was not given proper notice of the prosecution's intent to rely on these traffic violations. We hold that the trier of fact may consider statutes, including traffic code sections, in determining the standard of care in criminal negligence cases. However, we agree with Tabigne that the circuit court erred in the manner in which it delivered its instructions regarding the traffic code. Accordingly, we vacate Tabigne's conviction and sentence and remand for a new trial. In light of this disposition, we need not address Tabigne's remaining arguments.

2. HRE Rule 306 provides in relevant part:
 **Presumptions in criminal proceedings.** (a) Presumptions against the accused.
 (1) Scope. Except as otherwise provided by statute, in criminal proceedings, presumptions against an accused, recognized at common law or created by statute, including statutory provisions that certain facts are prima facie evidence of other facts or of guilt, are governed by this subsection.
 (2) Submission to jury. When a presumed fact establishes an element of the offense or negatives a defense, the court may submit the presumption to the jury only if a reasonable juror on the evidence as a whole, including the evidence of the basic facts, could find the presumed fact beyond a reasonable doubt.
 (3) Instructing the jury. The court may not direct the jury to find a presumed

# I. BACKGROUND

Tabigne was charged by a complaint filed on June 28, 1996, with one count of negligent homicide in the third degree, in violation of HRS § 707–704, *see supra* note 1, and one count of driving without no-fault insurance, in violation of HRS § 431:10C–104 (1993).[3] Tabigne was tried only on the former charge. The record does not indicate what disposition was made of the latter, and the matter is not addressed by the parties on appeal.

At trial, the parties stipulated, *inter alia*, that: (1) on March 3, 1995, a Toyota Camry operated by Tabigne collided with an Isuzu pickup truck operated by Gary Murai on the H–2 freeway near the Meheula Parkway overpass; and (2) as a result of the collision, Murai sustained serious injuries leading to his death at the scene.

The prosecution qualified Honolulu Police Department (HPD) Officer Russell K. Komoda as an expert in "traffic investigation." Officer Komoda testified that he was dispatched to the scene soon after the accident. There, he observed "yaw marks on the roadway, the asphaltic shoulder, and onto the grass" leading to where Tabigne's vehicle was discovered. Officer Komoda explained that

> [y]aw marks [are] made by a tire of a vehicle. The wheel itself is rolling, but the tires are slipping which is different from when you have a skid mark. Because in skid marks the wheels do not move, but

against the accused. Whenever a presumption against the accused is submitted to the jury, the court shall instruct the jury that, if it finds the basic facts beyond a reasonable doubt, it may infer the presumed fact but is not required to do so. In addition, if the presumed fact establishes an element of the offense or negatives a defense, the court shall instruct the jury that its existence, on all the evidence, must be proved beyond a reasonable doubt.

3. HRS § 431:10C–104 provides in relevant part that "no person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a motor vehicle insurance policy."

the car is still going. So you lay a different kind of tread pattern or markings on the roadway.

Yaw marks could be created by "[a] car going in a turn too fast so the tires aren't holding the road anymore." Such marks also indicate that the driver was not applying the brakes.

Officer Komoda further testified that, on the northbound section of the H-2 freeway approaching the Meheula Parkway overpass, there is an incline with a slight curve to the right. On cross-examination, Officer Komoda confirmed that, for some distance south of the Meheula Parkway overpass, there is a concrete barrier separating the northbound and southbound portions of the H-2 freeway designed to prevent collisions. The barrier ends just north of the overpass, at which point only a "grassy media[n]" separates the two sides of the highway. In the middle of the grassy median there is a drainage ditch. The median is sloped downward on both sides, and offers poor traction because of the grass. The shoulder on the left side of the freeway abutting the median is too narrow for an automobile to pull onto and still be completely out of the way of traffic without tipping into the ditch.

The prosecution also qualified HPD Officer Theodore Chong as an expert "accident reconstructionist." Officer Chong testified that, based on his evaluation of the evidence gathered by the investigating officers, he believed that Tabigne "over-steered by pulling his steering wheel towards the left causing the vehicle to yaw, rotate in a yaw and slid[e] across the grass hitting the drain and gutter." He estimated that Tabigne had been driving at fifty-seven miles per hour at the time of the accident.

Mark Inouye testified that he was driving southbound on the H-2 freeway behind a white pickup truck at the time of the accident. As the pickup truck approached the overpass, "a car suddenly came through the media[n] strip through the bushes ... and collided with the pickup truck. The car was airborne, and it was sideways." After the crash, Inouye pulled over and saw a man climb out of the car that had crossed the median strip. He noticed that the man had a

"fist full of long hair in his hand," which appeared to match the hair of the female passenger who he was able to observe inside the car.

Mary Lou Agdinaoay testified that she was Tabigne's girlfriend and was sitting in the passenger seat of his Camry at the time of the accident. She further testified that, at about the time that Tabigne had driven under the Meheula Parkway overpass, he had moved the auto into the left lane. As he did so, the vehicle had begun to shake from side to side. She denied that she had been fighting with Tabigne or that he had grabbed her hair.

Newton Kanno testified that he was driving his car on the off ramp heading toward Mililani Town at the time of the accident. He observed Tabigne's car pass in the "extreme left lane" at a "high rate of speed." Kanno estimated that the speed at which the vehicle was traveling was seventy miles per hour. He noticed that the auto's brake lights were not illuminated. He observed the vehicle traverse the median strip and collide with a southbound truck. On cross-examination, Kanno admitted having advised a police officer at the scene that the "the blue car ... moved slowly across the grass before impact." (Officer Komoda similarly testified that, when he spoke with Kanno by telephone on June 9, 1996, Kanno had stated that Tabigne's auto was "going the speed limit.")

During the settlement of jury instructions, Tabigne objected to the prosecution's proposed instructions that derived from provisions of the Statewide Traffic Code, HRS ch. 291C:

THE COURT: I understand that the defense will be objecting to all of the instructions that basically outline—

[TABIGNE'S COUNSEL:] The law.

THE COURT: —the law.

[TABIGNE'S COUNSEL:] Again, if the Court at this point would allow me to make an objection to all State's offered instructions relating to the Hawaii Traffic Code. And the basis would be that I believe under the statutory definition, the definition should be the only law that's given as far as the elements of the offense

and the states of mind pertaining to the elements of the offense.

The traffic law I believe is not applicable and was not intended to be applicable to supplement the law in this context in the criminal penal code.

Furthermore, I believe the traffic code law supplement as jury instructions is based on a theory of absolute liability with simple negligence in a criminal case is inconsistent with the legislative scheme and intention of the legislature and, therefore, would be misleading and inappropriate law to be given under the circumstances.

. . . .

THE COURT: Okay. All right. Before we break I'd like to place on the record why the Court is giving these instructions on the law. And, that is, that the commentary to 707[-] 703 and 704 indicates that "—agreed to the creation of three degrees of negligent homicide in order to preserve the present law distinction between gross negligence and simple negligence."

Therefore, it appears that the legislature . . . intended to keep the concept of simple negligence [in] negligent homicide cases that existed under the prior law. The Court has reviewed the *State v. Arena* case, 46 Haw. 315, 379 P.2d 594 (1963) ]. And in that case the Court indicated that simple or ordinary negligence is comparable to negligence in civil cases. And since violation of a statute can be evidence, but is not conclusive of negligence in civil negligence cases, the Court is giving instructions on violations of law as possible evidence of negligence in this negligent homicide.

The disputed instructions, as delivered to the jury, were as follows:

Under the law[,] the speed limit for the H–2 freeway northbound in the vicinity of the Meheula Parkway overpass is 55 miles per hour.[4] *If you find that the defendant violated this law,* you may, but are not required to, consider this in determining whether the defendant acted in a manner constituting simple negligence.

Under the law[,] no person is to drive a vehicle at a speed greater than is reasonable and prudent and having regard to the actual and potential hazards and conditions that existed.

Consistent with the foregoing, each person is to drive at safe [sic] and appropriate speed when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.[5] *If you find that the defendant violated this law,* you may but, [sic] are not required, to consider this in determining whether the defendant acted in a manner constituting simple negligence.

. . . .

Under the law[,] whenever any highway has been divided into two or more roadways by leaving an intervening space or by a physical barrier or clearly indicated dividing section so constructed as to impede[ ] vehicular traffic, a vehicle is to be driven only upon the right-hand roadway, unless directed or permitted use [sic] another roadway by official traffic control devices or police officers. And no vehicle is to be driven over or across or within any such dividing space[,] barrier[,] or section, except through an opening in such physical barrier or dividing section or space at a cross-over or intersection as established,

4. HRS § 291C–102(b) (1993) provides:

The director of transportation with respect to highways under the director's jurisdiction may place signs establishing maximum speed limits or minimum speed limits. Such signs shall be official signs and no person shall drive a vehicle at a speed greater than a maximum speed limit and no person shall drive a motor vehicle at a speed less than a minimum speed limit stated on such signs.

5. HRS § 291C–101 provides:

**Basic rule.** No person shall drive a vehicle at a speed greater than is reasonable and prudent and having regard to the actual and potential hazards and conditions then existing. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic, or by reason of weather or highway conditions.

unless specifically prohibited by public authority.

*If you find that the defendant violated this law,* you may, but are not required to, consider this in determining whether the defendant acted in a manner constituting simple negligence.

All right. Ladies and gentlemen, I'm going to re-read the first sentence of this. I left out one word.

Under the law[,] whenever any highway has been divided into two or more roadways by leaving an intervening space or by a physical barrier or clearly indicated dividing section so constructed as to impede vehicular traffic, a vehicle is to be driven only upon the right-hand roadway[,] unless directed or permitted to use another roadway by official traffic control devices or police officers, and no vehicle is to be driven over, across[,] or within any such dividing space, barrier, or section, except through an[ ] opening in such physical barrier or dividing section or space or at a cross-over or intersection as established[,] unless specifically prohibited by public authority.[6]

Under the law[,] a vehicle is to be driven as nearly as practicable entirely within a single lane and is not to be moved from the lane until the driver has first ascertained that such movement can be made with safety.[7]

*If you find that the defendant violated this law* you may, but are not required[ ] to[,] consider this in determining whether the defendant acted in a manner constituting simple negligence.

Under the law[,] an operator of a motor vehicle is to exercise due care in the operation of such vehicle upon any street or highway in order to avoid collision with any person, vehicle, or other property on or off such street or highway.[8]

*If you find that the defendant violated this law,* you may, but are not required[ ] to[,] consider this in determining whether the defendant acted in a manner constituting simple negligence.

(Emphases added.) [9]

The jury instructions also included the following:

You must consider all of the instructions as a whole and consider each instruction in light of all the others. Do not single out any word, phrase, sentence, or instruction and ignore the others. Do not give greater emphasis to any word, phrase, sentence, or instruction simply because it is repeated in these instructions.

You must presume the defendant is innocent of the charge against him. This presumption remains with the defendant throughout this trial, unless and until the

---

6. HRS § 291C–51 (1993) provides:
**Driving on divided highways.** Whenever any highway has been divided into two or more roadways by leaving an intervening space or by a physical barrier or clearly indicated dividing section so constructed as to impede vehicular traffic, every vehicle shall be driven only upon the right-hand roadway unless directed or permitted to use another roadway by official traffic-control devices or police officers. No vehicle shall be driven over, across, or within any such dividing space, barrier, or section, except through an opening in such physical barrier or dividing section or space or at a cross-over or intersection as established, unless specifically prohibited by public authority.

7. HRS § 291C–49 (1993) provides in relevant part:
**Driving on roadways laned for traffic.** Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all other consistent herewith shall apply.

(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that such movement can be made with safety.

8. Revised Ordinances of the City and County Honolulu (ROCCH) § 15–24.12 (1990) provides that "[e]very operator of a motor vehicle shall exercise due care in the operation of such vehicle upon any street or highway in order to avoid collision with any person, vehicle or other property on or off such street or highway."

9. We note that, by suggesting a five-item menu of options on the basis of any one of which the jury could find that the prosecution had proved the "simple negligence" element of negligent homicide in the third degree, the circuit court potentially compromised the requisite unanimity of the jury's verdict. *See State v. Arceo,* 84 Hawai'i 1, 27–33, 928 P.2d 843, 869–75 (1996).

prosecution proves the defendant guilty beyond a reasonable doubt.

The presumption of innocence is not a mere slogan, but is an essential part of the law that is binding upon you. It places upon the prosecution the duty of proving every material element of the offense charged beyond a reasonable doubt.

You must also disregard any remark I may have made, unless the remark was an instruction to you. You are to disregard any statement or action of mine that might have suggested to you that I am inclined to favor the claims or positions of either party. You are also to disregard any expression or statement of min[e] that might have suggested to you that I have an opinion relating to which witnesses are or are not worthy of belief, or what facts are or are not established, or what inferences should be drawn from the evidence.

. . . .

The defendant Rommel Tabigne is charged with the offense of negligent homicide in the third degree. A person commits the offense of negligent homicide in the third degree if he causes the death of another person by the operation of a vehicle in a manner which is simple negligence.

There are two material elements of the offense of negligent homicide in the third degree, each of which the prosecution must prove beyond a reasonable doubt.

These two elements are, one, that on or about March 3rd, 1995, on the Island of Oahu, State of Hawaii, the defendant caused the death of Gary Murai; and, two, that the defendant did so by operation of . . . a vehicle in a manner which is simple negligence.

. . . .

Simple negligence is defined as follows: A person acts with simple negligence with respect to the person's conduct when the person should be aware of a risk that the person engages in that conduct.

A person acts with simple negligence with respect to attendant circumstances when the person should be aware of a risk that those circumstances exist.

A person acts with simple negligence with respect to a result of the person's conduct when the person should be aware of a risk that the person's conduct will cause that result.

A risk is within the meaning of simple negligence if the person's failure to perceive it considering the nature and purpose of the person's conduct and the circumstances known to the person involves a deviation from the standard of care that a law abiding person would observe in the same situation.

The jury found Tabigne guilty of negligent homicide in the third degree on November 1, 1996. On December 26, 1996, he was sentenced to incarceration for one year, payment of $93,783.97 in restitution, and 275 hours of community service. Tabigne timely appealed.

## II. *STANDARD OF REVIEW*

 " 'When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading.' " *State v. Kinnane*, 79 Hawai'i 46, 49, 897 P.2d 973, 976 (1995) (quoting *State v. Kelekolio*, 74 Haw. 479, 514–15, 849 P.2d 58, 74 (1993) (citations omitted)). . . . *See also State v. Hoey*, 77 Hawai'i 17, 38, 881 P.2d 504, 525 (1994).

" '[E]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.' " *State v. Pinero*, 70 Haw. 509, 527, 778 P.2d 704, 716 (1989) . . . (quoting *Turner v. Willis*, 59 Haw. 319, 326, 582 P.2d 710, 715 (1978)).

[E]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to the conviction.

*State v. Heard,* 64 Haw. 193, 194, 638 P.2d 307, 308 (1981) (citations omitted). If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and a judgment of conviction on which it may have been based must be set aside. *See Yates v. Evatt,* 500 U.S. 391, 402–03 [111 S.Ct. 1884, 1892–93, 114 L.Ed.2d 432] (1991)[.]

*State v. Cullen,* 86 Hawai'i 1, 8, 946 P.2d 955, (1997) (quoting *State v. Arceo,* 84 Hawai'i 1, 11–12, 928 P.2d 843, 853–54 (1996) (quoting *State v. Holbron,* 80 Hawai'i 27, 32, 904 P.2d 912, 917, *reconsideration denied,* 80 Hawai'i 187, 907 P.2d 773 (1995) (some citations omitted) (brackets in original))).

## III. *DISCUSSION*

A. *Jurors May Consider Nonconformity With Relevant Statutory Standards In Determining Whether The Defendant Operated A Vehicle In A Manner Which Constitutes "Simple Negligence" Within The Meaning Of HRS § 707–704.*

■ Tabigne argues in his opening brief that "[t]here is no Hawaii statutory or case law authority which allows the presumption of criminal negligence from the commission of a traffic offense." He further asserts that the circuit court erred in making use of a civil negligence standard in a criminal prosecution.

■ In civil negligence cases, it is well-settled that "[p]roof of the failure of the defendant to conform his conduct to standards established by law for the protection of the class to which the injured party belongs, when shown to have a legitimate connection to the issue, is admissible as evidence of negligence." *Michel v. Valdastri, Ltd.,* 59 Haw. 53, 55, 575 P.2d 1299, 1301 (1978) (citing *Sherry v. Asing,* 56 Haw. 135, 149, 531 P.2d 648, 658 (1975), and *Young v. Honolulu Constr. & Draying Co.,* 34 Haw. 426, 435 (1938)). *See also Lee v. Corregedore,* 83 Hawai'i 154, 172, 925 P.2d 324, 342 (1996); *Hulsman v. Hemmeter Development Corp.,* 65 Haw. 58, 65–70, 647 P.2d 713, 719–22 (1982).

The commentary on HRS § 707–703 and 707–704 and this court's precedent make clear that the standard of care for negligent homicide is similar to that of civil negligence. The commentary on HRS §§ 707–703 and 707–704 notes that, "[i]n adopting the Code in 1972, the Legislature basically retained much of the prior Hawaii law relating to negligent homicide." In *State v. Arena,* 46 Haw. 315, 379 P.2d 594 (1963), this court construed the predecessor to HRS §§ 707–703 and 707–704, R.L.H. § 291–10 (1955), which provided that "[e]very person who by the operation of any vehicle in a careless, reckless or negligent manner, but not wilfully or wantonly, causes the death of another, shall be guilty of the crime of negligent homicide." This court held that, "[t]o sustain a conviction under this statute, only *ordinary negligence* on the part of the offending operator is required to be proven." *Arena,* 46 Haw. at 317, 379 P.2d at 598 (emphasis added).

In *Arena,* the defendant was charged with and convicted of negligent operation of his automobile by "operat[ing] said automobile at a speed greater than was reasonable and prudent under the conditions, thereby causing it to strike and collide with [another] automobile." 46 Haw. at 317, 379 P.2d at 597. The defendant had been driving on a highway when another car suddenly emerged from a private driveway in his path. *Id.* at 318, 379 P.2d at 598. Although he applied the brakes and swerved his car, the defendant was unable to avoid the collision. *Id.* In support of his motion for judgment of acquittal at trial, the defendant argued, *inter alia,*

> (1) [t]hat[,] under the rule that a person using a public highway has the right to presume that others using the highway will do so in a lawful manner[,] the defendant was under no legal duty to anticipate that the deceased would emerge from the private driveway illegally or in violation of the defendant's right of way; [and] (2)[t]hat the defendant, under the applicable ordinance, had the right of way[.]

*Id.* at 320, 379 P.2d at 599. In this connection, the defendant had introduced evidence of portions of the City and County of Honolulu Traffic Code regarding rights-of-way. *Id.* at 328, 379 P.2d at 603. This court was

unpersuaded by the defendant's argument on appeal because the record established that he had been driving at an excessive speed, and "an operator of a motor vehicle cannot arbitrarily rely upon the right of way gained as a result of excessive speed or by other negligent act or violation of the law." *Id.* at 332, 379 P.2d at 605 (internal quotation signals and citations omitted).

Nevertheless, the fact remains that the *Arena* court addressed the defendant's reliance on an ordinance to establish the standard of care in a criminal negligence prosecution and evaluated it on its merits. This court gave no indication that such reliance was improper simply because criminal, rather than civil, negligence was at issue; to the contrary, this court approached the issue much as it would have analyzed a defense in a civil negligence case.

Similarly, the supplemental commentary to HRS § 702–206 (1993) ("Definitions of states of mind") appears to suggest that criminal negligence, for purposes of HRS § 707–704, derives from the civil construct:

> The Legislature adopted § 206 as contained in the Proposed Draft of the Code; however, the Legislature also added to the Code the offense of negligent homicide in the second degree, set forth in § 707–704, which introduces a less culpable state of mind called "simple negligence"—*essentially a civil standard of negligence. (Cf.* § 702–204, 213, and 707–704 and commentaries thereon.)

(Emphasis added.)

Accordingly, inasmuch as nonconformity with relevant statutory standards may be admissible as evidence of negligence in civil cases, and simple negligence is defined by HRS § 707–704(2)(d) to be violation of "the standard of care that a *lawabiding person* would observe in the same situation" (empha-

sis added), it stands to reason, and we so hold, that the jury may, consistent with the requirements of due process and other rules peculiar to the criminal process, be allowed to consider relevant statutes or ordinances in criminal negligent homicide cases as well.

B. *The Challenged Jury Instructions Violated HRE Rule 306.*

▮▮▮ Tabigne contends that the circuit court violated the mandate of HRE Rule 306(a)(3) when it failed to instruct the jury that it was required to find certain "basic facts" beyond a reasonable doubt before indulging in "presumptions" with regard to violation of the traffic laws. HRE Rule 306(a)(3) provides in relevant part that *"[w]henever* a presumption against the accused is submitted to the jury, the court *shall* instruct the jury that, if it finds the basic facts beyond a reasonable doubt, it may infer the presumed fact but is not required to do so." (Emphases added.)

> [A]n HRE 306(a) presumption against the accused, whether recognized at common law or enacted by statute, *see* HRE 306(a)(1), merely creates a "permissible inference of fact" whereby the trier of fact is permitted but not compelled to draw an inference of guilt from the circumstances which constitute a prima facie case" and retains the prerogative "to determine whether a reasonable doubt of guilt exists despite the permitted inference, whether or not the accused has offered any evidence." *See State v. Dwyer,* 57 Haw. 526,] 529, 560 P.2d [110,] 112 [ (1977) ].

*State v. Pone,* 78 Hawai'i 262, 273, 892 P.2d 455, 466 (1995).[10] Thus, where, in criminal proceedings, the circuit court "gently commend[s]" an inference to the jury in its instructions, *see supra* note 10, the "commendation" falls within the purview of HRE Rule

---

10. HRE Rule 301(a) (1993) provides a significantly different definition of the term "presumption":

(1) "Presumption" is (A) a rebuttable assumption of fact, (B) that the law requires to be made, (C) from another fact or group of facts found or otherwise established in the action.

(2) The following are not presumptions under this article:

. . .

(B) Inference. The trier of fact may logically and reasonably make an assumption from an-

other fact or group of facts found or otherwise established in the action, but is not required to do so. . . .

However, in *Pone,* this court adopted Professor Addison M. Bowman's argument that "presumptions against the accused [within the meaning of HRE Rule 306(a) ] are not presumptions at all in the Rule 301 sense, but are rather a form of gently commended inference that has been held not to violate due process." *Pone,* 78 Hawai'i at 272, 892 P.2d at 465 (quoting A. Bowman, *Hawaii Rules of Evidence Manual* 62–63 (1990))

306 and must comply with HRE Rule 306(a)(3).

■ "[A]n inference is ... 'a logical and reasonable conclusion of the existence of a fact ... from the establishment of other facts[,] from which, by the process of logic and reason, and based upon human experience, the existence of the assumed fact may be concluded by the trier of fact.'" *Pone,* 78 Hawai'i at 273, 892 P.2d at 466 (quoting *State v. Emmsley,* 3 Haw.App. 459, 464–65, 652 P.2d 1148, 1153, *cert. denied,* 65 Haw. 683 (1982)) (some brackets and ellipsis points added and some in original) (emphasis deleted). In the present case, the circuit court instructed the jury: "If you find that the defendant violated [the various traffic laws], you may, but are not required to, consider this in determining whether the defendant acted in a manner constituting simple negligence." In other words, the circuit court permitted the jury to "conclude[]" the "existence of [an] assumed fact," *i.e.,* conduct "constituting simple negligence," from "the establishment of other ['basic'] facts," presumably, the evidence, *inter alia,* that Tabigne (1) failed to brake, (2) "over-steered," and (3) drove at a rate of speed in excess of fifty-five miles per hour. Therefore, because the circuit court instructed the jury regarding "presumptions" within the meaning of HRE Rule 306, and notwithstanding that it advised the jurors that they might, but were not required to, conclude the existence of the assumed fact, the circuit court nevertheless erred in failing to instruct the jury, pursuant to HRE Rule 306(a)(3), that it was required to find "the basic facts beyond a reasonable doubt."

C. *Examining The Circuit Court's Erroneous Jury Instructions In Light Of The Entire Proceedings, There Is A Reasonable Possibility That Error May Have Contributed To Tabigne's Conviction.*

■ The prosecution argues that, even if the circuit court erred in the manner in which it delivered its instructions regarding the statewide traffic code, any such error was rendered harmless by the court's instructions to the jury that it must (1) consider all the instructions as a whole and not "single out any word, phrase, sentence or instruction and ignore the others," (2) presume the defendant to be innocent and not convict him unless it found every element of the charged offense to have been proved beyond a reasonable doubt, and (3) "disregard any expression or statement [by the circuit court] ... that might have suggested ... [that the circuit court had] an opinion relating to ... what facts [were] or [were] not established, or what inferences should be drawn from the evidence."

We disagree with the prosecution. Merely informing the jury that it should consider the court's instructions as a whole cannot obviate an error of *omission* where the remaining instructions fail to provide the crucial information. Moreover, the circuit court's general instruction that the defendant must be presumed innocent and that each element must be proved beyond a reasonable doubt was insufficient to cure the defect in this case. In effect, by first asking the jury to determine whether Tabigne had "violated" the various traffic laws, and then allowing it to "consider" any such violations "in determining whether the defendant acted in a manner constituting simple negligence," the circuit court directed the jury to render silent verdicts on a number of uncharged traffic offenses for which no elements were defined and no burden of proof allocated.[11] Whereas the jury was instructed that it must find each *element* of the charged offense—negligent homicide—beyond a reasonable doubt as a precondition to conviction, it was not provided any criteria by which to determine whether Tabigne had "violated" any of the enumerated traffic laws. It was thus entirely possible that the jury interpreted

(footnote omitted) (brackets in original). Accordingly, the definition of a "presumption," as set forth in HRE Rule 301, is narrowed considerably for purposes of HRE Rule 306.

11. We note that this case does not involve the introduction of uncharged conduct for purposes, for example, of proving the motive or identity of the defendant pursuant to HRE Rule 404(b) (1993). The present problem is not the interjection of uncharged conduct, but, rather, of uncharged statutes and an uncharged ordinance.

the circuit court's instructions to allow it to find "violations" of the traffic laws pursuant to a standard less stringent than "beyond a reasonable doubt."

With regard to the prosecution's third point, the mere fact that the circuit court instructed the jury to ignore any impression that the court harbored an opinion regarding inferences that should be drawn from the evidence could not, in itself, mitigate its earlier "gentle commendations" pertaining to inferences to be drawn from the enumerated provisions of the traffic code. Unquestionably, the instruction failed to apprise the jury that it must find that the "basic facts" to which the provisions of the traffic code pertained had been proved beyond a reasonable doubt, as required by HRE Rule 306(a)(3), before it could draw any inferences premised upon their violation.

The prosecution further argues that there was no need for the circuit court to instruct the jurors to find violations of the traffic offenses "beyond a reasonable doubt" because the court expressly instructed the jury that it was "not required" to consider the violation of the traffic offenses in determining whether the defendant was "simply negligent." However, it would not have been unreasonable, even in light of this caveat, for the jurors to have determined that "the standard of care that a lawabiding person would observe in the same situation" was conterminous with the statutes and/or ordinance cited to them. This risk was particularly pronounced with regard to Revised Ordinances of the City and County of Honolulu (ROCCH) § 15–24.12 (1990), which provides in relevant part that "[e]very operator of a motor vehicle shall exercise due care in the operation of [a] vehicle ... in order to avoid collision[.]" The circuit court's jury instructions completely failed to reconcile or harmonize the competing "standard of care that a law-abiding person would observe in the same situation," as set forth in HRS § 707–704(2)(d), and the exhortation, contained in ROCCH § 15–24.12, that "every operator of a motor vehicle shall exercise due care in the operation of such vehicle...."

■ "[D]eviation from the standard of care that a law-abiding person would observe in the same situation," *see* HRS § 707–704(2)(d), being a component of "simple negligence," *see* HRS § 707–704(1) and (2), is an aspect of negligent homicide that must be proved beyond a reasonable doubt. *See Pone,* 78 Hawai'i at 268, 892 P.2d at 461 ("The right of an accused to be convicted only upon proof by the prosecution of all of the elements of the crime charged against him beyond a reasonable doubt is a constitutionally protected right.") (quoting *Christoffel v. United States,* 338 U.S. 84, 89, 69 S.Ct. 1447, 93 L.Ed. 1826 (1949)). *See also Arceo,* 84 Hawai'i at 30, 928 P.2d at 872 (citing *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). Assuming that the jury determined that Tabigne had violated one or more of the traffic laws before it "considered" them in relation to Tabigne's alleged "simple negligence," as the circuit court's instructions expressly invited it to do, the jury may well have found against Tabigne on the only disputed element of the negligent homicide charge—simple negligence—based on a standard lower than "beyond a reasonable doubt."

■ "[A]n evidentiary device such as a presumption or an inference 'must not undermine the factfinder's responsibility at trial, based on evidence adduced by the state, to find the ultimate facts beyond a reasonable doubt.'" *State v. Bumanglag,* 63 Haw. 596, 618, 634 P.2d 80, 94 (1981) (quoting *Ulster County Court v. Allen,* 442 U.S. 140, 156, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979)). Thus, even considering the instructions as a whole, we hold that the circuit court's failure to comply with HRE Rule 306(a)(3) was prejudicially erroneous and misleading. Inasmuch as it is "impossible to determine to what extent the jury relied upon the statutory inference," *State v. Tiedemann,* 7 Haw.App. 631, 635, 790 P.2d 340, 342 (1990), and the circuit court failed adequately to instruct the jury regarding "presumptions against the accused," as required by HRE Rule 306(a)(3), we further hold that there was a "reasonable possibility that error may have contributed to the conviction" in this case and that the circuit court's error was, therefore, not harmless beyond a reasonable doubt. According-

ly, we vacate Tabigne's conviction and sentence and remand for a new trial.

## IV. CONCLUSION

Based on the foregoing analysis, we vacate Tabigne's conviction and sentence and remand for a new trial.