132 Nev., Advance Opinion 58

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| MARY LOU CORNELLA,<br>Petitioner,<br>vs.<br>CHURCHILL COUNTY, STATE OF<br>NEVADA, JUSTICE COURT OF NEW<br>RIVER TOWNSHIP; THE HONORABLE<br>MICHAEL D. RICHARDS; THE THIRD<br>JUDICIAL DISTRICT COURT OF THE<br>STATE OF NEVADA, IN AND FOR THE<br>COUNTY OF CHURCHILL; AND THE<br>HONORABLE DAVID A. HUFF,<br>DISTRICT JUDGE,<br>Respondents,<br>and<br>THE STATE OF NEVADA,<br>Real Party in Interest. | No. 56329<br><br>**FILED**<br><br>AUG 1 2 2016<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY _____<br>CHIEF DEPUTY CLERK |

Original petition for a writ of certiorari challenging an order of the district court affirming on appeal a judgment of conviction entered in justice court.

*Petition granted.*

The Digesti Law Firm, Ltd., and Matthew P. Digesti and Laurence P. Digesti, Reno,
for Petitioner.

Adam Paul Laxalt, Attorney General, Carson City; Arthur E. Mallory, District Attorney, and Benjamin D. Shawcroft, Chief Deputy District Attorney, Churchill County,
for Real Party in Interest.

---

11/3/16: Corrected per letter to publishers. CJ

16-24992

BEFORE PARRAGUIRRE, C.J., HARDESTY and SAITTA, JJ.

## OPINION

By the Court, HARDESTY, J.:

In this writ proceeding, we consider constitutional challenges to NRS 484B.657(1),[1] which provides that a person is guilty of misdemeanor vehicular manslaughter if, "while driving or in actual physical control of any vehicle, [the person] proximately causes the death of another person through an act or omission that constitutes simple negligence."

Petitioner Mary Lou Cornella maintains that the phrases "act or omission" and "simple negligence" render the statute unconstitutionally void for vagueness. She also maintains that a showing of "simple negligence" rather than criminal intent violates her right to due process.

We conclude that NRS 484B.657(1) is not unconstitutionally vague if (1) "an act or omission," as used in NRS 484B.657(1), is read to require an unlawful act or omission; and (2) "simple negligence," as used in NRS 484B.657(1), is read as ordinary negligence. We further conclude that vehicular manslaughter closely resembles a traditional public welfare offense. Therefore, a conviction pursuant to NRS 484B.657(1), without a criminal intent requirement, does not violate due process. Because the district court erroneously upheld the constitutionality of NRS 484B.657(1)

---

[1]In 2009, the Legislature substituted NRS 484B.657 for NRS 484.3775. Although the title of the chapter governing this statute has been modified, the statute's language remains unchanged. We refer to the current codification in this opinion.

SUPREME COURT
OF
NEVADA

(O) 1947A

without interpreting the phrase "act or omission," we grant the petition and direct the clerk of the court to issue a writ of certiorari upholding the constitutionality of NRS 484B.657(1) consistent with this opinion.

## FACTS

While driving through an intersection controlled by a four-way stop sign in Fallon, Cornella ran over and killed 12-year-old Brittany Cardella, who was riding her bicycle. After the accident, the State charged Cornella with two misdemeanor counts: (1) failure to yield the right of way in violation of NRS 484B.257,[2] and (2) vehicular manslaughter in violation of NRS 484B.657(1).

A bench trial was held in justice court in Churchill County, and on the second day, Cornella filed two motions to dismiss the charges against her. In her first motion, Cornella argued that the State failed to meet its burden as to count one because NRS 484B.257 requires a motorist to yield to another vehicle, and a bicycle is not a vehicle pursuant to NRS 484A.320.[3] She further argued that, without count one, count two also failed because her alleged failure to yield was the predicate "act or omission" for the vehicular-manslaughter charge. The justice court granted the motion as to count one but denied it as to count two. Cornella then filed a second motion, arguing that the vehicular-manslaughter statute is unconstitutionally vague because simple negligence is not

---

[2]In 2009, the Legislature substituted NRS 484B.257 for NRS 484.319; however, the statute's language remains unchanged, and we thus refer to the current codification in this opinion.

[3]In 2009, the Legislature also substituted NRS 484A.320 for NRS 484.217, and the statute's language remains unchanged.

SUPREME COURT
OF
NEVADA

(O) 1947A

3

sufficiently defined to warn people of the acts that will result in a violation. After hearing arguments on the second motion, the justice court denied it.

The trial then proceeded with the State presenting multiple theories to demonstrate Cornella's negligence that resulted in Brittany's death. After Cornella presented her defense, she renewed her motion to dismiss count two, but the court again denied it and found Cornella guilty of vehicular manslaughter in violation of NRS 484B.657(1). The justice court sentenced her to 150 hours of community service.

Following the trial, Cornella appealed to the district court. *See* Nev. Const. art. 6, § 6(1); NRS 177.015(1)(a). Before the district court, she argued that NRS 484B.657(1) was unconstitutionally vague and that there was not substantial evidence to support her conviction. Without addressing Cornella's arguments concerning the vagueness of the phrases in NRS 484B.657(1), the district court found that NRS 484B.657(1) "clearly proscribes causing death of a person by the negligent operation of a vehicle" and upheld Cornella's conviction. Cornella thereafter filed this petition for a writ of certiorari, challenging the constitutionality of NRS 484B.657(1).

## DISCUSSION

Initially, we note that pursuant to Nevada Constitution Article 6, Section 4(1), this court has the power to issue a writ of certiorari. NRS 34.020(3) authorizes our review of a certiorari petition when a district court has examined the constitutionality or validity of a statute on appeal from a conviction in justice or municipal court for a violation of that statute. Because that is the case here, we exercise our discretion to consider this writ petition to the extent that it asks us to review the

constitutionality or validity of the vehicular-manslaughter statute and the statute's alleged infringement of Cornella's right to due process.

"The constitutionality of a statute is a question of law that we review de novo." *Silvar v. Eighth Judicial Dist. Court*, 122 Nev. 289, 292, 129 P.3d 682, 684 (2006). "Statutes are presumed to be valid," and the burden is on the challenging party to demonstrate that a statute is unconstitutional. *Id.* This court "construe[s] statutes, if reasonably possible, so as to be in harmony with the constitution." *Thomas v. Nev. Yellow Cab Corp.*, 130 Nev., Adv. Op. 52, 327 P.3d 518, 521 (2014) (internal quotations omitted).

## I.

Cornella argues that NRS 484B.657(1) is unconstitutional because any "act or omission" and "simple negligence" are highly malleable concepts, and, therefore, the conduct prohibited by the statute is imprecise and void for vagueness. The "'[v]agueness doctrine is an outgrowth . . . of the Due Process Clause[s] of the Fifth' and Fourteenth Amendments to the United States Constitution." *State v. Castaneda*, 126 Nev. 478, 481, 245 P.3d 550, 553 (2010) (third alteration in original) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). A criminal law may be vague for one of two reasons: "(1) if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited'; or (2) if it 'is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Id.* at 481-82, 245 P.3d at 553 (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010)). In applying this two-prong test to a criminal penalty, such as the one involved here, we look to whether "vagueness permeates the text," which means a statute will be invalid if the conduct prohibited by the statute is "void in most

SUPREME COURT
OF
NEVADA

(O) 1947A

5

circumstances." *Flamingo Paradise Gaming, LLC v. Chanos*, 125 Nev. 502, 512-13, 217 P.3d 546, 553-54 (2009) (internal quotation omitted).

Under the first prong of the vagueness test, "a statute will be deemed to have given sufficient warning as to proscribed conduct when the words utilized have a well settled and ordinarily understood meaning when viewed in the context of the entire statute." *Nelson v. State*, 123 Nev. 534, 540-41, 170 P.3d 517, 522 (2007) (quoting *Williams v. State*, 118 Nev. 536, 546, 50 P.3d 1116, 1122 (2002)). But a statute is not unconstitutionally vague simply because there are some marginal cases where it is difficult to ascertain whether the facts violate the statute. *Id.* at 541, 170 P.3d at 522. Moreover, "[m]athematical precision is not [required] in drafting statutory language." *Castaneda*, 126 Nev. at 482, 245 P.3d at 553 (quoting *City of Las Vegas v. Eighth Judicial Dist. Court*, 118 Nev. 859, 864, 59 P.3d 477, 481 (2002)). Thus, when statutory language has ordinarily understood meanings, this court applies those meanings to define the limits of the statute.

Under the second prong of the vagueness test, in order to avoid discriminatory enforcement of a criminal statute, the Legislature must "establish minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (quoting *Smith v. Goguen*, 415 U.S. 566, 574 (1974)). This prong is more important than the first prong because otherwise "a criminal statute may permit a standardless sweep, which would allow the police, 'prosecutors, and juries to pursue their personal predilections.'" *Silvar*, 122 Nev. at 293, 129 P.3d at 685 (quoting *Kolender*, 461 U.S. at 358).

SUPREME COURT
OF
NEVADA

(O) 1947A

We must now determine whether the phrases "an act or omission" and "simple negligence" make NRS 484B.657(1) void for vagueness. We address each of these phrases in turn.

*"An act or omission" denotes an unlawful act or omission*

Because Nevada has not specified the type of "act or omission" that is required pursuant to NRS 484B.657(1), we look to other jurisdictions for guidance. In *State v. Russo*, the Superior Court of Connecticut held that a negligent-vehicular-homicide statute was not void for vagueness. 450 A.2d 857, 862 (Conn. Super. Ct. 1982). Essential to the court's reasoning, however, was the need to show a violation of a separate traffic law to provide the required degree of care by which to establish the negligent act that formed the basis of the negligent-vehicular-homicide conviction. *Id.*; *see also State v. Tabigne*, 966 P.2d 608, 616 (Haw. 1998) (holding that "the jury may, consistent with the requirements of due process and other rules peculiar to the criminal process, be allowed to consider relevant statutes or ordinances in criminal negligent homicide cases"). Employing this reasoning that the degree of care is determined by traffic laws for a negligent-vehicular-homicide conviction, we conclude that "an act or omission," as used in NRS 484B.657(1), denotes a violation of a traffic law. Thus, there must be evidence that a defendant committed an unlawful act or omission, which would warrant a traffic violation, in order to support a conviction pursuant to NRS 484B.657(1).

We note that this unlawful act requirement is supported by NRS 484B.657's legislative history,[4] by the fact that Nevada is one of only a few states to criminalize simple negligence without requiring an underlying unlawful act,[5] and because it would be difficult for people to abide by a statute that punished simple negligence without an unlawful act or omission.

*"Simple negligence" denotes "ordinary negligence"*

Because Nevada has also not specifically defined "simple negligence," we start with the different degrees of negligence recognized in the law and by this court. This court has recognized a difference between "ordinary," "gross," and "criminal" negligence. *See Hart v. Kline*, 61 Nev. 96, 100-01, 116 P.2d 672, 673-74 (1941). Ordinary negligence and gross negligence are degrees of the same conduct, and we have held that "[o]rdinary and gross negligence differ in degree of inattention, while both

---

[4]In support of the bill that enacted what was then NRS 484.3775, Assemblywoman Sheila Leslie, Assemblywoman Debbie Smith, and a private citizen lamented on the fact that negligent drivers who are responsible for the death of another only receive traffic violations. Hearing on A.B. 295 Before the Assembly Judiciary Comm., 73d Leg. (Nev., March 29, 2005). Similarly, Ben Graham, the legislative representative at the time for the Clark County District Attorney's Office and the Nevada District Attorneys Association, noted that someone could be charged under the statute "[i]f you are guilty of simple negligence of a traffic violation where a death occurs." *Id.* We conclude that this spotlight on traffic violations demonstrates the Legislature's intent that NRS 484B.657(1) require an unlawful act.

[5]For example, both the Idaho and Pennsylvania statutes require ordinary negligence *and* an unlawful act. *See Haxforth v. State*, 786 P.2d 580, 581-82 (Idaho Ct. App. 1990); *Commonwealth v. Heck*, 491 A.2d 212, 215 (Pa. Super. Ct. 1985).

SUPREME COURT
OF
NEVADA

(O) 1947A

differ in kind from willful and intentional conduct which is or ought to be known to have a tendency to injure." *Id.* at 101, 116 P.2d at 674 (quoting *Shaw v. Moore*, 162 A. 373, 374 (Vt. 1932)).

In the civil context, "ordinary" negligence has been described as the "failure to exercise that degree of care in a given situation which a reasonable man under similar circumstances would exercise." *Driscoll v. Erreguible*, 87 Nev. 97, 101, 482 P.2d 291, 294 (1971); *see also* Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 3 (Am. Law Inst. 2010) (defining negligence as failure to "exercise reasonable care under all the circumstances"). Gross negligence "is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care." *Hart*, 61 Nev. at 100, 116 P.2d at 674 (quoting *Shaw*, 162 A. at 374). Similar to our definition of gross negligence, criminal negligence has been described as "a gross deviation from the standard of care that a reasonable person would observe in the actor's situation." Model Penal Code § 2.02(2)(d) (Am. Law Inst., Official Draft & Revised Comments 1980).

When the Legislature does not specifically define a term, this court "presume[s] that the Legislature intended to use words in their usual and natural meaning." *Wyman v. State*, 125 Nev. 592, 607, 217 P.3d 572, 583 (2009) (alteration in original) (quoting *McGrath v. State Dep't of Pub. Safety*, 123 Nev. 120, 123, 159 P.3d 239, 241 (2007)). *Black's Law Dictionary* defines "negligence" as "[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation," and notes that *"ordinary negligence"* and *"simple negligence"* are coextensive terms with the same meaning. *Negligence, Black's Law Dictionary* (10th ed. 2014). We note that other jurisdictions also expressly

equate simple negligence with ordinary negligence[6] and that the Legislature chose the term "simple negligence" to distinguish it from the heightened criminal negligence standard.[7] Thus, based on the ordinarily understood meaning of simple negligence as reflected in the dictionary definitions, caselaw and statutes from other jurisdictions, and the legislative history for the vehicular-manslaughter statute, we conclude that "simple negligence," as used in NRS 484B.657(1), denotes ordinary negligence. Accordingly, because the unlawful act or omission requirement clearly delineates the type of activity prohibited and ordinary negligence is a reasonableness person standard, "a person of ordinary intelligence [is provided] fair notice of" the conduct that NRS 484B.657(1)

---

[6]*See, e.g., State v. Hazelwood*, 946 P.2d 875, 885 (Alaska 1997) (noting that the term "'negligence' always denotes ordinary, civil negligence"); *Heck*, 491 A.2d at 217 (noting that, in Pennsylvania, "vehicular homicide is a crime predicated on 'civil,' 'simple,' or 'ordinary' negligence" and citing a definition of "[o]rdinary [n]egligence"); *State v. Jenkins*, 294 S.E.2d 44, 45 (S.C. 1982) (holding that unlawful neglect of a child required "simple negligence, rather than criminal negligence"); *see also* Haw. Rev. Stat. § 707-704(2)(d) (2014) (defining "[s]imple negligence" as it applies to negligent homicide, which includes "a deviation from the standard of care that a law-abiding person would observe in the same situation").

[7]Ben Graham, the legislative representative at the time for the Nevada District Attorneys Association, testified that simple negligence "is not a high degree of negligence" and punishes conduct less than criminal negligence. Hearing on A.B. 295 Before the Senate Judiciary Comm., 73d Leg. (Nev., April 21, 2005). Similarly, Assemblywoman Sheila Leslie noted that the purpose of the bill was to punish "inattentive" driving resulting in a fatality. *Id.* As stated previously, inattentiveness is a characteristic of ordinary negligence. *See Hart*, 61 Nev. at 101, 116 P.2d at 674.

Supreme Court
of
Nevada

(O) 1947A

10

proscribes. *Castaneda*, 126 Nev. at 481, 245 P.3d at 553 (quoting *Holder*, 561 U.S. at 18).

Having concluded that "an act or omission" denotes an unlawful act or omission and "simple negligence" denotes ordinary negligence, we consider the second prong of the vagueness test under *Castaneda*. To recall, the second prong looks to whether the statute "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* at 481-82, 245 P.3d at 553 (quoting *Williams*, 553 U.S. at 304). The unlawful act or omission requirement provides an objective standard so "seriously discriminatory enforcement" is not implicated. *Id.*; *cf. Silvar*, 122 Nev. at 296, 129 P.3d at 687 (noting that prostitution-loitering ordinance was unconstitutionally vague because, in part, it lacked objective standards by which to evaluate enforcement). Accordingly, we conclude that NRS 484B.657(1), as interpreted in this opinion, is not unconstitutionally vague.

## II.

Cornella also argues that NRS 484B.657(1)'s simple negligence standard violated her right to due process. We acknowledge that the use of simple negligence, rather than criminal negligence, is not without some controversy in terms of whether it meets due process criteria for imposing criminal liability. A general principle of criminal law is that some level of intent or culpability is required to punish someone for a crime. *Morissette v. United States*, 342 U.S. 246, 250 (1952). In *Morissette*, the United States Supreme Court held:

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief

SUPREME COURT OF NEVADA

(O) 1947A

11

in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.

*Id.* Nevada has codified this concept in NRS 193.190, which requires that "[i]n every crime or public offense there must exist a union, or joint operation of act and intention, or criminal negligence." Despite this requirement, some crimes are punished in the absence of criminal intent or culpability. *See Morissette*, 342 U.S. at 252-57. The most common offenses that fall into this category are "public welfare offenses," which "are in the nature of police regulations." *Id.* at 255, 257 (internal quotations omitted). These offenses did not arise out of the common law as they have "different antecedents and origins." *Id.* at 252. Instead, public welfare offenses generally arose out of the Industrial Revolution and involve "neglect where the law requires care, or inaction where it imposes a duty." *Id.* at 253-55. The purpose of public welfare offenses is "to require a degree of diligence for the protection of the public which shall render violation impossible." *Id.* at 257 (quoting *People v. Roby*, 18 N.W. 365, 366 (Mich. 1884)). Thus, the Supreme Court has recognized a state's authority to dispense with criminal intent or culpability, noting that "[t]here is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition." *Lambert v. California*, 355 U.S. 225, 228 (1957). However, this power has limits. *See Heck*, 491 A.2d at 219 ("[T]he legislature's power to eliminate mens rea is not without limitation . . . .").

A crime may be treated as a public welfare offense requiring only ordinary negligence when it: (1) is not rooted in the common law, (2) involves a small penalty, (3) does not tarnish the character of the offender, and (4) is of a type that a person could reasonably be expected to

SUPREME COURT
OF
NEVADA

(O) 1947A

abide by. *See Holdridge v. United States*, 282 F.2d 302, 310 (8th Cir. 1960); *Haxforth*, 786 P.2d at 582; *Heck*, 491 A.2d at 220-21. Nevada is not alone in punishing vehicular manslaughter/homicide based on ordinary negligence.[8] Other jurisdictions that do so include Connecticut, the District of Columbia, Hawaii, Idaho, Massachusetts, Michigan, South Dakota, and Virginia.[9] *See United States v. Gomez-Leon*, 545 F.3d 777,

---

[8]We note that Nevada also criminalizes ordinary negligence in other statutes, including NRS 202.280(1) (making it a misdemeanor to "maliciously, wantonly or negligently discharge[ ] . . . any . . . firearm" in certain places), NRS 475.010 (making it a misdemeanor to "willfully or negligently set[ ] or fail[ ] to guard carefully or extinguish any fire"), NRS 475.020 (making it a misdemeanor to "willfully or negligently leave[ ] [a] fire or fires burning or unexhausted, or fail[ ] to extinguish them thoroughly"), and NRS 476.030 (making it a misdemeanor to "injure[ ] or cause[ ] injury to the person or property of another" "by careless, negligent or unauthorized use or management of any explosive or combustible substance").

[9]Conn. Gen. Stat. § 14-222a(a) (2011); D.C. Code § 50-2203.01 (2001) ("Any person who, by the operation of any vehicle in a careless, reckless, or negligent manner, but not wilfully or wantonly, shall cause the death of another, . . . shall be guilty of a felony . . . ."); Haw. Rev. Stat. § 707-704(1) (2014) ("A person is guilty of the offense of negligent homicide in the third degree if that person causes the death of another person by the operation of a vehicle in a manner which is simple negligence."); Haw. Rev. Stat. §§ 707-704(2) (defining simple negligence); Idaho Code § 18-4006(3)(c) (2016); Mass. Ann. Laws ch. 90, § 24G(b) (LexisNexis 2012) (A person who, while under the influence of alcohol or drugs, "operates a motor vehicle recklessly or negligently so that the lives or safety of the public might be endangered and by any such operation causes the death of another person, [is] guilty of homicide by a motor vehicle."); Mich. Comp. Laws Ann. § 257.601d(1) (West 2016) ("A person who commits a moving violation . . . that causes the death of another person is guilty of a misdemeanor . . . ."); S.D. Codified Laws § 22-16-41 (2009) ("Any person who, while under the influence of alcohol, drugs, or substances . . . without design to effect death, operates or drives a vehicle of any kind in a

*continued on next page . . .*

SUPREME COURT
OF
NEVADA

(O) 1947A

792-93 (9th Cir. 2008) (comparing California's vehicular-manslaughter statute to statutes in other states and noting that several states punish involuntary manslaughter or negligent homicide on a showing of ordinary negligence). Courts and legal commentators considering whether vehicular manslaughter/homicide is a public offense requiring only ordinary negligence have reached differing conclusions. We are persuaded, however, that vehicular manslaughter under NRS 484B.657(1) is a public welfare offense, and, therefore, simple or ordinary negligence is sufficient to meet due process requirements.

In *Haxforth*, the Court of Appeals of Idaho concluded that Idaho's vehicular-manslaughter statute[10] did not violate due process even though it required only ordinary negligence. 786 P.2d at 582. The court reasoned that traffic laws such as the vehicular-manslaughter statute had no roots in the common law. *Id.* The *Haxforth* court also observed that the Idaho statute carries a light penalty (it is a misdemeanor) and that

---

... *continued*

negligent manner and thereby causes the death of another person, including an unborn child, is guilty of vehicular homicide."); *State v. Two Bulls*, 547 N.W.2d 764, 766 (S.D. 1996) (South Dakota's statute requires that the person was driving under the influence and a showing of ordinary negligence); Va. Code Ann. § 18.2-36.1(A) (2014) (providing in part that a driver who "unintentionally causes the death of another person" while the driver is under the influence is guilty of involuntary manslaughter); *Keech v. Commonwealth*, 386 S.E.2d 813, 816 (Va. Ct. App. 1989) (providing that when a driver is not under the influence, "a higher degree of negligence" is required).

[10]Idaho defines vehicular manslaughter as "the operation of a motor vehicle . . . [that] cause[s] . . . death because of . . . [t]he commission of an unlawful act, not amounting to a felony, without gross negligence." Idaho Code § 18-4006(3)(c) (2016).

"[t]he punishment is directed not at evil conduct but at negligent acts or omissions tragically resulting in loss of life" such that a conviction under the statute "does not gravely besmirch the defendant's character." *Id.* Based on this analysis, the court held that vehicular manslaughter "resembles more closely a public welfare offense, and as such need not contain a criminal negligence requirement." *Id.*; *accord Russo*, 450 A.2d at 862 (rejecting argument that Connecticut's negligent-homicide statute[11] was unconstitutional because it lacked an element of intent where statute regulates conduct under police power, and a violation, therefore, can support criminal conviction, regardless of intent). As Stanford University law professor Herbert L. Packer has noted, "negligence has a very strong foothold in the criminal law. It finds its most explicit formulation in the statutes penalizing negligent homicide in the driving of an automobile." *Mens Rea and the Supreme Court*, 1962 Sup. Ct. Rev. 107, 143-44 (1962); *see also* C.P. Jhong, Annotation, *What Amounts to Negligence Within Meaning of Statutes Penalizing Negligent Homicide by Operation of a Motor Vehicle*, 20 A.L.R. 3d 473 § 3 (1968) ("Many cases have held or recognized that a showing of ordinary negligence is sufficient to convict an accused under a vehicular negligent homicide statute describing the punishable misconduct in terms of 'negligence' without any modification or qualification being attached to such word.").

---

[11]Conn. Gen. Stat. § 14-222a(a) (2011) ("[A]ny person who, in consequence of the negligent operation of a motor vehicle, causes the death of another person shall be fined not more than one thousand dollars or imprisoned not more than six months or both.").

The conflicting position is reflected in *Heck*, wherein the Superior Court of Pennsylvania concluded that Pennsylvania's negligent-vehicular-homicide statute[12] was unconstitutionally vague because it criminalized negligent conduct. 491 A.2d at 214-15. In reaching its conclusion, the court observed that the statute imposed a stiff penalty (up to five years in prison plus revocation of the defendant's driver's license), a conviction under the statute damages the defendant's reputation by branding him a "criminal killer," and it "carries with it the stamp of criminality and the kind of opprobrium that under the common law was reserved for true crimes of moral turpitude." *Id.* at 222-23. The *Heck* court further explained that it was unreasonable to penalize someone for inadvertent conduct because "it can serve no rational purpose of the criminal law to subject the merely negligent actor to the additional punitive sanctions of the criminal law." *Id.* at 224. Specifically, punishing negligent conduct does not serve the purposes of deterrence,

---

[12]The Pennsylvania statute in effect at the time provided:

> Any person who unintentionally causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic . . . is guilty of homicide by vehicle, a misdemeanor of the first degree, when the violation is the cause of death.

75 Pa. Stat. and Cons. Stat. Ann. § 3732 (West 1982). This statute required an unlawful act, whereas Nevada's statute is silent on this matter. The current version of Pennsylvania's homicide-by-vehicle statute requires recklessness or gross negligence. 75 Pa. Stat. and Cons. Stat. Ann. § 3732(a) (West 2010).

SUPREME COURT
OF
NEVADA

(O) 1947A

16

rehabilitation, or removing dangerous people from society. *Id.* at 224-25 ("One who is not aware of the criminality of his conduct cannot be deterred from performing it. And one who is morally blameless need not be isolated from society or rehabilitated." (internal quotations omitted)); *see also* Jerome Hall, *Negligent Behavior Should be Excluded from Penal Liability*, 63 Colum. L. Rev. 632, 634 (1963) (noting that "today it is well established in the common law of most [modern legal systems] that conviction for manslaughter, including homicide by automobile, requires at least recklessness").

Applying the relevant criteria, we agree with the *Haxforth* court and conclude that our vehicular-manslaughter statute closely resembles a public welfare offense, and, therefore, a violation thereof does not require criminal intent, but rather may be based on simple or ordinary negligence. First, negligent vehicular manslaughter was not a crime at common law. *Haxforth*, 786 P.2d at 582. Second, unlike the more severe penalty under the Pennsylvania statute considered in *Heck*, vehicular manslaughter in Nevada is punishable only as a misdemeanor, NRS 484B.657(1), and carries a relatively light sentence served in a county jail for not more than six months, a fine of $1,000, or both the fine and imprisonment.[13] NRS 193.150(1). In contrast, the Nevada offense that carries a penalty similar to the Pennsylvania statute—reckless driving causing death or substantial bodily harm—includes a criminal intent more akin to criminal or gross negligence. *See* NRS 484B.653(6) ("[A] person who does any act or neglects any duty imposed by law while driving or in

---

[13]An additional penalty is available under certain circumstances set forth in NRS 484B.130. *See* NRS 484B.657(2).

actual physical control of any vehicle in willful or wanton disregard of the safety of persons or property, if the act or neglect of duty proximately causes the death of or substantial bodily harm to another person, is guilty of a category B felony and shall be punished by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 6 years and by a fine of not less than $2,000 but not more than $5,000."). Third, although serving six months in a county jail may slightly harm the character of the offender, we look to the nature of a vehicular-manslaughter conviction and the fact that it does not encompass evil conduct. *Haxforth*, 786 P.2d at 582. As to the fourth factor, that the statute must embody a rule of conduct that a person could reasonably be expected to abide by, we conclude that simple negligence meets this requirement based on our previous conclusion that NRS 484B.657(1) requires an unlawful act. We so hold because traffic laws are akin to public welfare offenses, and people should be reasonably able to comply with their terms. *See id.* The Nevada Legislature exercised its authority to exclude from NRS 484B.657(1) the traditional requirement of criminal intent or culpability and instead required simple negligence. We see no reason to circumvent that authority here. *See Lambert*, 355 U.S. at 228 ("There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition.").

## CONCLUSION

Because the district court failed to correctly interpret the phrase "an act or omission" as requiring an unlawful act or omission, we grant the petition and direct the clerk of this court to issue a writ of certiorari instructing the district court to reconsider Cornella's direct

SUPREME COURT
OF
NEVADA

appeal for the sole purpose of applying NRS 484B.657(1) consistent with the interpretation of the statute in this opinion.[14]

_____, J.
Hardesty

We concur:

_____, C.J.
Parraguirre

_____, J.
Saitta

---

[14]Because Cornella did not challenge the district court's order by way of a writ of mandamus, we do not address whether there was sufficient evidence presented to support Cornella's conviction. *See State v. Eighth Judicial Dist. Court (Hedland)*, 116 Nev. 127, 134, 994 P.2d 692, 696-97 (2000) (discussing limited circumstances in which this court will entertain review on mandamus of a district court's decision under its appellate jurisdiction).