# STATE OF HAWAII, Plaintiff-Appellee, *v.* PATRICK CONSTANTINO RUSSO, Defendant-Appellant

## NO. 11115

(CR. NO. 54190)

MARCH 16, 1987

NAKAMURA, ACTING C.J., PADGETT, HAYASHI, AND
WAKATSUKI, JJ., AND INTERMEDIATE COURT OF
APPEALS ASSOCIATE JUDGE TANAKA,
IN PLACE OF LUM, C.J., RECUSED

OPINION OF THE COURT BY NAKAMURA, J.

Once again, Patrick Constantino Russo appeals from the judgment of the Circuit Court of the First Circuit adjudging him guilty of the murders of Carl Greene and Johnny Carson.[1] The circuit court, he now avers, "erred in refusing to instruct the jury regarding the Defendant's asserted defense that he acted under the influence of an 'extreme emotional disturbance for which there [was] a reasonable explanation.' "[2] But we conclude from a review of the record that the jury was instructed properly on the defense of insanity raised by the defendant.[3] The trial court's refusal to give a manslaughter instruction was not error, and we affirm the judgment.

I.

On the morning of January 16, 1980 Russo set out to procure a permit for the acquisition of a firearm. With the permit in hand, he went directly from the police station to a sporting goods store where he purchased a .38 caliber pistol. He fired the weapon for the first time that afternoon, engaging in target practice at a firing range. Shortly after 8:00 p.m. that night he used the gun again,

---

[1] We vacated his first conviction of the two murders on grounds "that the trial court erred in not suppressing statements elicited from the defendant without the procedural safeguards designed to protect his privilege against self-incrimination and not excluding evidence obtained in violation of his right to be free of unreasonable searches and seizures." *State v. Russo*, 67 Haw. 126, 128, 681 P.2d 553, 556 (1984).

[2] Hawaii Revised Statutes (HRS) § 707-702(2) (1976) provides that
[i]n a prosecution for murder it is a defense, which reduces the offense to manslaughter, that the defendant was, at the time he caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the view-point of a person in the defendant's situation under the circumstances as he believed them to be.

[3] By virtue of HRS § 704-400(1) (1976),
[a] person is not responsible, under [the Hawaii Penal] Code, for conduct if at the time of the conduct as a result of physical or mental disease, disorder, or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

firing four to seven shots into the Sports Page Lounge, a bar he had frequented in the past but had not visited for some time. The deadly volley of gunfire claimed two victims, and Russo was charged with "intentionally or knowingly caus[ing] the death[s] of [Carl Greene and Johnny Carson] by shooting [them] with a firearm."

Russo denied the charges in the indictment and proceeded to trial. The jury found him guilty of both counts of murder, and he appealed from the trial court's judgment. He averred the jury verdict was not supported by substantial evidence, the assistance provided by counsel was ineffective, and the trial court committed a host of errors in the course of trial. Concluding from a review of the record that the court erred in admitting evidence obtained in violation of his privilege against self-incrimination and his right to be free from unreasonable searches and seizures, we vacated the judgment and ordered a new trial.

At the second trial, Russo did not deny causing the deaths of Carl Greene and Johnny Carson. His counsel's efforts focused on the establishment of insanity. Counsel elicited testimony from two psychiatrists and three clinical psychologists to support the claim that the defendant was suffering from paranoid schizophrenia when he committed the homicides and could not be deemed responsible for his criminal conduct.

At the close of evidence, however, counsel offered an instruction reiterating the language of HRS § 707-702(2). If given, the instruction would have directed the jury to find the defendant guilty of manslaughter rather than murder if it found he caused the deaths of Greene and Carson while "under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation."[4] In light of our ruling in *State v. Manloloyo*, 61 Haw. 193, 600 P.2d 1139 (1979), the trial court rejected the instruction offered by the defendant. Its instruction on insanity followed

---

[4] The instruction offered by the defendant read as follows:

In a prosecution for murder it is a defense, which reduces the offense to manslaughter, that the defendant was, at the time he caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be.

the language of HRS § 704-400(1) and advised the jury that a person is not responsible for his criminal conduct "if at the time of the conduct as a result of physical or mental disease, disorder, or defect he lack[ed] substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law."

The jury found the defendant's claim of insanity was not sustained by the evidence, and Russo was again convicted of the murders of Greene and Carson. In contrast to the first appeal where counsel raised numerous claims of error, the sole issue pursued by counsel here is "whether the trial court erred in refusing to instruct the jury regarding the Defendant's asserted defense that he acted under the influence of an 'extreme emotional disturbance for which there [was] a reasonable explanation.'"

## II.

A defendant in a criminal case tried before a jury undoubtedly "is entitled to an instruction on every defense or theory of defense having *any* support in the evidence." *State v. O'Daniel,* 62 Haw. 518, 527, 616 P.2d 1383, 1390 (1980) (citations omitted) (original emphasis). But "where evidentiary support for the asserted defense, or for any of its essential components, is clearly lacking, it would not be error for the trial court either to refuse to charge on the issue or to instruct the jury not to consider it. *See United States v. Gosser,* 339 F.2d 102, 109-110 (6th Cir. 1964)." *State v. Horn,* 58 Haw. 252, 255, 566 P.2d 1378, 1380-81 (1977). The question then is whether or not there was evidence supporting a defense that Russo committed the homicides under the influence of an extreme mental or emotional disturbance that can be reasonably explained. A review of the record indicates there was not.

## A.

Believing there would be "overwhelming evidence of Patrick Russo's mental irresponsibility," defense counsel in his opening statement to the jury proclaimed that "on this basis . . . at the close of the evidence, I'll ask you to render a verdict of not guilty by reason of insanity." He subsequently affirmed in a bench confer-

ence that insanity was the only defense being raised.[5] But he now insists "there was more than sufficient evidence . . . supporting [a] defense [of 'extreme mental or emotional disturbance'] and . . . the trial court was thus required to instruct the jury regarding that defense."

"That defense" is one "which reduces the offense [from murder] to manslaughter [if] the defendant was, at the time he caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation." HRS § 707-702(2). Its roots are lodged in the common law where a person who "kill[ed] another without malice aforethought, under the sudden impulse of passion, excited by provocation or other adequate cause, by the party killed, of a nature tending to disturb the judgment and mental faculties, and weaken the possession of self-control of the killing party, [was] not guilty of murder, but manslaughter." *The King v. Greenwell,* 1 Haw. 85 [146], 87 [149] (1853). *See also The King v. Sherman,* 1 Haw. 88 [150] (1853).

The drafters of the Hawaii Penal Code, however, chose not to recommend codification of this rule. Instead of the rule that a homicidal act committed in the "heat of passion" upon "adequate provocation" was manslaughter rather than murder, they adopted a provision serving to reduce murder to manslaughter "when mitigating mental or emotional disturbances are present." *See* HRS § 707-702 commentary. The mitigating defense is couched in the language of section 210.3 of the Model Penal Code (M.P.C.), which "treats on a parity with classic provocation cases situations where the provocative circumstance is something other than an injury inflicted by the deceased on the actor but nonetheless is an event that arouses extreme mental or emotional disturbance." M.P.C. § 210.3 comment 3. Clearly, "[t]here is a larger element of subjectivity" here than in the common-law rule. *Id.* "The ultimate test,

---

[5] When defense counsel stated he had no objection to the introduction of evidence, which in the first appeal we ruled had been obtained in violation of the defendant's constitutional rights, the trial judge questioned counsel at length to verify that the defendant was indeed waiving his right to object. Counsel confirmed the waiver, explaining: "There's only one defense in this case. Insanity, paranoid schizophrenic. And it's okay for this evidence to go in. It's consistent with our defense in this case."

however, is objective; there must be a 'reasonable' explanation or excuse for the actor's disturbance." *Id.*

The language derived from the model code thus "does not authorize mitigation on the basis of individual abnormality without any measure of the defendant against an objective standard." M.P.C. § 210.3 comment 5. For "[m]ental disorder clearly does not preclude moral depravity, and there [are] cases where the actor's mental condition, although recognized as disturbed or abnormal, should be regarded as having no just bearing on his liability for intentional homicide." *Id.* We were confronted with such a case in *State v. Manloloyo, supra.*

## B.

The defendant there was charged with murder and assault in the first degree. He "assert[ed] the defense that he suffered from a mental disease or disorder which exclude[d] criminal responsibility." *Id.* at 195 n.1, 600 P.2d at 1140 n.1. "The diagnosis of the physical and mental condition of [John Manloloyo, Jr.] at the time of the alleged offense . . . was . . . schizoid personality with paranoid and compulsive features (or schizoid personality; depressive neurosis)." *Id.* at 196 n.2, 600 P.2d at 1141 n.2. The jury, however, found the claim of insanity was not substantiated by the evidence.

The issue "presented on [the defendant's] appeal [was] whether the trial court erred in refusing to give [his] requested instruction on the offense of manslaughter." *Id.* at 193, 600 P.2d at 1139. The instruction would have advised the jury that manslaughter was a lesser included offense of murder and that the prosecution had to prove the defendant did not commit the homicide while "under the influence of an extreme mental or emotional disturbance for which there is a reasonable explanation." *Id.* (emphasis omitted). In our view, the instruction would have been appropriate if what was offered to support the claim of insanity "constitute[d] 'any evidence . . . that raise[d] the question whether the offense [was] murder or manslaughter . . . .' " *Id.* at 196-97, 600 P.2d at 1141 (quoting *State v. Warner,* 58 Haw. 492, 498, 573 P.2d 959, 963 (1977) ). "Specifically," we said, "the question then is whether the . . . evidence of

mental disease or disorder [offered by John Manloloyo, Jr.] fall[s] within the scope of the provision of Section 707-702(2): 'while under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation.' " *State v. Manloloyo,* 61 Haw. at 197, 600 P.2d at 1141.

We ruled the evidence fell beyond the scope of the provision because "[t]he facts show[ed] . . . appellant did deliberately and intentionally set out to kill and did kill the victim." *Id.* Though we acknowledged the defendant's mental disease or disorder arguably "diminished" his "mental capacity," we dismissed the argument. "[E]ven a strained construction of the provisions of Section 707-702(2)," we said, "would not permit 'diminished mental capacity' as a defense which would reduce the offense of murder to an offense of manslaughter" under such circumstances. *Id.* (citations omitted).

### C.

"The rule . . . that provocation [could], within narrow bounds, reduce murder to manslaughter, represent[ed] . . . a limited concession to natural human weakness." W. LaFave & A. Scott, *Handbook on Criminal Law* § 76, at 582 (1972) (quoting Report of the Royal Commission on Capital Punishment 52-53 (1953) ). While HRS § 707-702(2) "relaxes the rigorous objectivity of the common-law doctrine," it still "require[s] that the actor's emotional distress be based on 'reasonable explanation or excuse.' " M.P.C. § 210.3 comment 5. This key phrase "preserves the essentially objective character of the inquiry and erects a barrier against debilitating individualization of the legal standard." *Id.*

Like John Manloloyo, Jr., Patrick Russo deliberately set out to kill his victims. Granted, he may have been mentally or emotionally disturbed; but nothing Russo offered in support of his claim of insanity provided "a 'reasonable' explanation or excuse" for his conduct under any test of reasonableness. One who would coolly seek out and intentionally kill the owner and a patron of a bar he once frequented and justify the acts on grounds that habitués of the establishment were "leaving me out" of their activities and

"[t]hese guys were going to kill me unless I killed them"[6] is either insane or morally depraved. A ruling that evidence of this nature also furnishes a basis for mitigating the offense of murder to manslaughter "would undermine the normative message of the criminal law" communicated via HRS §§ 707-701 and 707-702. M.P.C. § 210.3 comment 5.

The jury was instructed properly on the defense of insanity asserted by the defendant, and the judgment of the circuit court is affirmed.

*Richard T. Pafundi* for appellant.

*Howard Luke (Peter Van Name Esser* on the brief), Deputy Prosecuting Attorneys, for appellee.

---

[6] This was one of the reasons given by the defendant to explain his conduct. His concededly bizarre testimony at trial was partially summarized by counsel in his opening brief as follows:

Russo did not "make friends easily." (4 Tr. 87) "I don't consider Carl [Greene] my friend because of a couple of things that happened." (4 Tr. 87)

Russo was "kind of heartbroken that [an individual was] going to threaten me at the bridge table about these stupid whores . . . and these prostitutes do have alot [sic] to do why I got Carl Greene." (4 Tr. 90)

"They were . . . see, I knew there was something going on. They were having parties and leaving me out. And that's why I didn't stay with the dart team . . . They didn't know how to relate to me, as a celebrity or a mental boy. You understand what the problem is." (4 Tr. 90, 91)

Russo was disturbed with [two] patrons of the Sports Page[] about "[one of them] having a room to rent but not offering it to him. I said I'd love to take it because I was friendly with them and I was on the dart team. And they said no, we don't want you, and they all walked out and left me in the place by myself." (4 Tr. 92)

Why did Russo shoot into the Sports Page? "So Carl was coming to get me at that very moment and the cops were going to let him kill me." (4 Tr. 136) Russo gave numerous other reasons for the shootings. (4 Tr. 112-137) "These guys were going to kill me unless I killed them and it was an underworld squeeze. I don't know if its [sic] true or not." (4 Tr. 120)