978 P.2d 797

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Mario CABRERA, Defendant–Appellant.**

**No. 21617.**

Supreme Court of Hawai'i.

May 18, 1999.

---

Deborah L. Kim, Deputy Public Defender, on the briefs, for the defendant-appellant Mario Cabrera.

Loren J. Thomas, Deputy Prosecuting Attorney, on the briefs, for the plaintiff-appellee State of Hawai'i.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by LEVINSON, J.

The defendant-appellant Mario Cabrera appeals from his conviction of theft in the second degree, in violation of Hawai'i Revised Statutes (HRS) § 708–831(1)(b) (1993 & Supp.1998).[1] On appeal, Cabrera contends that the circuit court reversibly erred (1) by failing properly to instruct the jury regarding (a) the state of mind as to the value of the property requisite to convict Cabrera of second degree theft and (b) the defenses of ignorance or mistake of fact, and (2) by admitting evidence, precluded by Hawai'i Rules of Evidence (HRE) Rules 404(b) (Supp.1998)[2] and 403 (1993),[3] that the securi-

---

1. HRS § 708–831 provides in relevant part that "[a] person commits the offense of theft in the second degree if the person commits theft ... [o]f property or services the value of which exceeds $300." "Theft" is defined in HRS § 708–830 (1993), which provides in relevant part that "[a] person commits theft if the person ... (8)(a) conceals or takes possession of the goods or

merchandise of any store or retail establishment, *with intent to defraud*." (Emphasis added.)

2. HRE Rule 404 provides in relevant part:

   **Character evidence not admissible to prove conduct; exceptions; other crimes.**

   . . . .

ty guards investigating the theft commenced surveillance of Cabrera based on their recognition of him in connection with prior bad acts. We agree that the jury instructions given in this matter inadequately apprised the jury that, in order to convict Cabrera of second degree theft, the prosecution was required to prove beyond a reasonable doubt that Cabrera *intended* to obtain property valued in excess of $300.00, *i.e.*, that Cabrera possessed the requisite state of mind with respect to the attendant circumstance of "value." Accordingly, we reverse Cabrera's conviction and remand this matter to the circuit court for a new trial.

## I. BACKGROUND

On October 31, 1994, Lamar Kauffman, a loss prevention officer for the J.C. Penney Department Store [hereinafter, "J.C. Penney"], located at the Ala Moana Shopping Center in the City and County of Honolulu, was in plain clothes, patrolling the fourth floor of the store for shoplifters. Shortly after 8:00 p.m., Kauffman observed a large plastic bag, which was partially concealed in a merchandise display located in the carpet and drapery department. Inside the bag, Kauffman discovered a selection of clothing from the men's department, which was located on the third floor of the store. Kauffman returned the bag to the location at which he had first observed it and notified the other loss prevention officers on duty at the time of his discovery. Upon learning of Kauffman's discovery, another loss prevention officer, Craig Okano, who was operating the store's video surveillance cameras that evening, began scanning the area nearby. Kauffman lingered in the area to observe whether anyone approached to pick up the bag; he also requested that the other officers in the store remain alert with respect to any suspicious activity.

Shortly before the store was scheduled to close, a third loss prevention officer, Clayton Yim, observed Cabrera entering the store via the Diamond Head-mauka doors on the third level. Cabrera proceeded directly to the elevator and entered it. When Yim communicated this information to Okano, Okano began scanning the various levels of the store to determine where Cabrera exited the elevator. Okano spotted Cabrera on the fourth floor, walking toward the carpet and drapery department. He began recording Cabrera's activities on videotape.

On the fourth floor, Kauffman watched as Cabrera approached the carpet and drapery department. He observed Cabrera approach the display where the bag of merchandise was located, remove the bag, and immediately return to the elevator. Kauffman testified that he observed Cabrera continuously from the time Cabrera left the elevator on the fourth floor until he reentered the elevator and that at no time did Cabrera approach a cash register and attempt to pay for the items in the bag. After Cabrera reentered the elevator, Kauffman proceeded to the parking area on level three via an outside stairwell.

Back on level three, Yim observed that, two to four minutes after Cabrera had first entered the elevator, Cabrera exited the elevator, carrying a large black plastic garbage bag. Cabrera left the store by means of the same doors through which he had entered. Cabrera walked to a car, which was parked nearby, and was in the process of opening the trunk of the car when he was confronted

---

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible where such evidence is probative of any other fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident. In criminal cases; the proponent of evidence to be offered under this subsection shall provide *reasonable notice in advance of trial*, or during trial if the court excuses pretrial notice on good cause shown, of the date, location, and general nature of any such evidence it intends to introduce at trial. (Emphasis added).

3. HRE Rule 403 provides in relevant part that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

by Kauffman, Yim, and a fourth security officer, Ryan Takahashi.

Cabrera told the officers that he had found the bag in the elevator and was looking for someone to whom to return it. He returned with the officers to J.C. Penney's security office. Thereafter, Kauffman examined the bag and determined that it included several items of men's clothing. From the price tags on the items, it was calculated that their total value was $428.00. Kauffman did not find any receipts for the items in the bag.

On November 9, 1994, Cabrera was charged with theft in the second degree. Prior to trial in September 1997, the circuit court heard Cabrera's motion *in limine* to exclude evidence of prior bad acts. The prosecution argued that such evidence was admissible pursuant to HRE Rule 404(b), *see* , *supra* note 2, as probative of Cabrera's intent and modus operandi. The circuit court granted Cabrera's motion.

Nevertheless, at trial, Kauffman testified that, upon first observation, he had "recognized" Cabrera. The following colloquy ensued:

A. At about 8:30, one of the other guys on staff that worked with myself noticed a person that we recognized—

[Deputy Prosecuting Attorney (DPA)]: Okay. Your Honor, may we approach at this time?

THE COURT: You may.

(The following proceedings were held at the bench:)

[Defense Counsel]: Your Honor, I would object at this point. I don't want to stand up in front of the jury and object. But I would object to this question.

[DPA]: You Honor, I instructed my witnesses not to mention the prior incidents pursuant to the motion in limine.... I mentioned to my witnesses not to mention the earlier inciden[ts] involving Mr. Cabrera. But they do recognize him, Your Honor. Is it okay—I just want to make sure I don't violate the motion in limine. Is it okay if they simply mention that they recognize him but not go into how—

THE COURT: I'll permit it. I'll overrule the objection.

[Defense Counsel]: Your Honor, if I may, to clarify, recognize him from the day of this incident. ID is not an issue. Recognize him from the day of this incident, from October 31st.

[DPA]: Well, what he's going to testify to is that they recognized Mario—they saw him come in, said, oh, that's Mario, and that's it. They won't talk about what happened prior.

[Defense Counsel]: Okay.

[DPA]: But just that they're familiar with him.

THE COURT: I'll permit it.

Subsequently, Okano testified that he "was notified by loss prevention officer Clayton Yim and Ryan Takahashi that a Mario Cabrera was entering the store on the third level." Yim also testified: "I was on the third floor, and I noticed a vehicle pull up to the store [and] park in the second stall next to the entrance—entry door. I observed a male exit the vehicle that I recognized as ... Mario Cabrera." Cabrera did not object to the testimony of either Okano or Yim.

Cabrera stipulated with the prosecution (1) that the items contained in the bag that he carried out of the store were the property of J.C. Penney and (2) that he did not have permission to remove the items from the store without paying for them. He testified in his own defense that, preceding his arrival at J.C. Penney, he had been working at Molina Engineering, which was located at Pearl Harbor. Cabrera further testified that his work day had ended at about 8:15 p.m. and that he had accepted a ride home from a friend, Darren Okada. Cabrera claimed that, while he was riding with Okada, Okada recruited him to participate in Okada's scheme to steal items from J.C. Penney. Cabrera asserted that Okada told him that he, Okada, had earlier planted the bag full of merchandise at the store and that Okada described its location. Cabrera reported that, upon arrival at Ala Moana Center, he had dropped Okada off on the first level of the shopping center on the Ala Moana Boulevard side. Cabrera indicated that he then drove the car up to the third level and parked near the entrance to J.C. Penney.

He acknowledged, as the loss prevention officers had recounted, that he had entered the store, proceeded to the location where the bag was located, taken the bag, and walked out of the store. He conceded that, at the time, he was aware that he was stealing. However, he claimed that he did not look inside the bag and had no knowledge of its contents.

On cross-examination, he further testified as follows:

Q. (By [DPA]) The scheme that Darren had and this risk that you were taking, was it for like maybe two dollars? Did he tell you how much he was going to get from this?

A. I didn't recall.

Q. Did you think it was some small deal, like maybe steal two dollars worth of stuff?

A. I didn't recall.

Q. Did you think going in there that maybe it would be more than $300 worth of stuff?

A. I didn't recall.

Q. Do you know whether or not it was going to be for a lot of money?

A. I have no idea.

Q. So you took this risk, you're not going to get anything out of it, not knowing how much it was going to be, and you took it anyway because Darren asked you to, right?

A. Yes.

The circuit court's Jury Instruction No. 13 provided:

The state of mind with which a person commits an act[,] such as "intentionally[,]" may be proved by circumstantial evidence. While witnesses may see and hear, and thus be able to give direct evidence of what a person does or fails to do, there can be no eye-witness account of the state of mind with which the acts are done or omitted. But what a person does or fails to do may or may not indicate the state of mind with which he does or refrains from doing an act.

Cabrera objected to the instruction as follows:

Your Honor, Mr. Cabrera is charged with Theft in the [Second] Degree, [HRS § ] 708–831, and it's charged as a shoplifting type offense, [HRS § ] 708–833.5. Your Honor, shoplifting is defined as concealing or taking possession of goods or merchandise of any store or retail establishment with the intent to defraud. And it's our argument that the intent not only applies to the state of mind as far as defrauding is concerned, but the intent also applied to other elements of the statute, such that the property or service—excuse me, that the property exceeded $300 in value. Your Honor, we're arguing here that it actually should be an intentional state of mind applied to the $300, the $300 limit, because shoplifting is specified—it's a specific [intent] crime....

Your Honor, if the court does not agree with that, we'd argue that the lesser state[s] of mind should apply, specifically knowingly and recklessly, because HRS [§ ] 702–204, state of mind required, specifically states that if the state of mind is not listed or not mentioned in the statute that the—if it's not specified by the law that the element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly.

Cabrera also objected to Jury Instruction No. 19, which provided:

A person commits the offense of Theft in the Second Degree if he conceals or takes possession of the goods or merchandise, the value of which exceeds $300, of a store or retail establishment with the intent to defraud.

There are two material elements of the offense of Theft in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.

These two elements are:

1. That on or about October 31, 1994, in the City and County of Honolulu, the Defendant concealed or took possession of the goods or merchandise, the value of which exceeds $300.00, of J.C. Penney Co., Inc.; and

2. That the Defendant did so with intent to defraud J.C. Penney Co. of the goods or merchandise.[4]

Cabrera objected to Instruction No. 19 as follows: "[W]e're arguing that the state of mind required as to the value of the property should be at least recklessly."

Cabrera also requested the following instruction:

> In any prosecution for an offense, it is a defense that the Defendant engaged in the prohibited conduct under ignorance or mistake of fact if the ignorance or mistake negates that state of mind required to establish an element of the offense.

> The burden is upon the prosecution to prove beyond a reasonable doubt that the Defendant did not act in mistake of fact, but that he acted with the intent to defraud J.C. Penney, Co.[,] Inc. of its goods or merchandise. If the prosecution fails to meet its burden, then you must find the Defendant not guilty.

In support of the instruction, Cabrera argued that he had been mistaken as to the value of the stolen items. However, the proposed

instruction was refused, the circuit court ruling that

> [t]he legislative intent in shoplifting in this court's view plainly was not to apply the state of mind to value. The state of mind in a shoplifting is with intent to defraud the merchant or retailer [of] goods or merchandise. The prosecution still must prove beyond a reasonable doubt the value of the merchandise, but the prosecution does not have to prove beyond a reasonable doubt that an accused had the intent to defraud the merchant or retailer of that value.

The jury found Cabrera guilty of the charged offense. The prosecution moved for sentencing as a repeat offender, pursuant to HRS § 706–606.5 (1993). The motion was granted. Accordingly, Cabrera was sentenced to a five-year term of imprisonment, with a mandatory minimum term of three years and four months. This timely appeal followed.

## II. STANDARDS OF REVIEW

### A. Jury Instructions

■ " 'When jury instructions or the omission thereof are at issue on appeal, the

---

4. The Court's Jury Instruction No. 19 was a modified version of Hawai'i Standard Jury Instructions Criminal (HAWJIC) Instruction No. 10.21 (1996). The commentary to that instruction expressly directs the reader to HAWJIC Instruction No. 10.00A(2) (1996) in cases in which the defendant's state of mind as to the value of the property is a disputed issue. That instruction, which is derived from HRS §§ 708–801(4) and (5) (1993 & Supp.1998), provides in relevant part:

> If you find beyond a reasonable doubt that the value of the [property] [services] exceeded *(specify relevant threshold amount)*, you may, but are not required to, infer that the Defendant believed or knew the [property] [services] to be of that value.
> It is a defense to *(name of charged offense)* that the Defendant believed the valuation of the [property] [services] to be *(specify relevant threshold amount)* or less.

(Brackets and emphases in original.)

The above-quoted instruction, of course, implicates this court's decisions in *State v. Tabigne*, 88 Hawai'i 296, 966 P.2d 608 (1998), and *State v. Pone*, 78 Hawai'i 262, 892 P.2d 455 (1995), as well as the Intermediate Court of Appeals' decision in *State v. Mitchell*, 88 Hawai'i 216, 965 P.2d 149 (App.1998), pertaining to the application of Hawai'i Rules of Evidence (HRE) Rule 306 (1993) in criminal cases.

> [A]n HRE 306(a) presumption against the accused, whether recognized at common law or enacted by statute, *see* HRE 306(a)(1), merely creates a "permissible inference of fact" whereby the trier of fact "is permitted but not compelled to draw an inference of guilt from the circumstances which constitute a prima facie case" and retains the prerogative "to determine whether a reasonable doubt of guilt exists despite the permitted inference, whether or not the accused has offered any evidence."
> *See State v. Dwyer*, 57 Haw. [526,] 529, 560 P.2d [110,] 112 [ (1977) ].

*Tabigne*, 88 Hawai'i at 304, 966 P.2d at 616 (quoting *Pone*, 78 Hawai'i at 273, 892 P.2d at 466). In the instant matter, neither party requested an instruction modeled on Instruction No. 10.00A(2), and the circuit court, evidently mindful of our admonition that "great care should be exercised in drafting and delivering jury instructions about presumptions," *Pone*, 78 Hawai'i at 272, 892 P.2d at 465, *see also Mitchell*, 88 Hawai'i at 221–24, 965 P.2d at 154–57, did not elect to submit such an instruction *sua sponte*. The failure to instruct the jury regarding an inference that it was permitted, but was not required, to make was not plain error. Accordingly, we are left with Jury Instruction No. 19 alone, and our analysis addresses that instruction unadorned by one modeled after HAWJIC Instruction No. 10.00A(2).

standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading,'" *State v. Kinnane,* 79 Hawai'i 46, 49, 897 P.2d 973, 976 (1995) (quoting *State v. Kelekolio,* 74 Haw. 479, 514–15, 849 P.2d 58, 74 (1993) (citations omitted))... . *See also State v. Hoey,* 77 Hawai'i 17, 38, 881 P.2d 504, 525 (1994).

" '[E]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.'" *State v. Pinero,* 70 Haw. 509, 527, 778 P.2d 704, 716 (1989) ... (quoting *Turner v. Willis,* 59 Haw. 319, 326, 582 P.2d 710, 715 (1978)).

[E]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to conviction.

*State v. Heard,* 64 Haw. 193, 194, 638 P.2d 307, 308 (1981) (citations omitted). If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside. *See Yates v. Evatt,* 500 U.S. 391, 402–03 [111 S.Ct. 1884, 1892–93, 114 L.Ed.2d 432] ... (1991)[.]

*[State v.] Arceo,* 84 Hawai'i [1,] 11–12, 928 P.2d [843,] 853–54 [ (1996) ] (quoting *State v. Holbron,* 80 Hawai'i 27, 32, 904 P.2d 912, 917, *reconsideration denied,* 80 Hawai'i 187, 907 P.2d 773 (1995) (some citations omitted) (brackets in original) (emphasis deleted)); *see also State v. Loa,* 83 Hawai'i 335, 350, 926 P.2d 1258, 1273 (1996); *State v. Robinson,* 82 Hawai'i 304, 310–11, 922 P.2d 358, 364–65 (1996).

*State v. Maumalanga,* 90 Hawai'i 58, 62–63, 976 P.2d 372, 376–77 (1998) (quoting *State v. Cullen,* 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997)) (ellipsis points in original) (some brackets added and some in original).

## B.   *Interpretation Of A Statute*

"[T]he interpretation of a statute ... is a question of law reviewable *de novo.*" *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (quoting *State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura,* 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa,* 79 Hawai'i 1, 3, 897 P.2d 928, 930, *reconsideration denied,* 79 Hawai'i 341, 902 P.2d 976 (1995); *State v. Nakata,* 76 Hawai'i 360, 365, 878 P.2d 699, 704, *reconsideration denied,* 76 Hawai'i 453, 879 P.2d 558 (1994), *cert. denied,* 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995). ·

*Gray v. Administrative Director of the Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original). *See also State v. Soto,* 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists... .

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray,* 84 Hawai'i at 148, 931 P.2d at 590 (quoting *State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brack-

ets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*Ho v. Leftwich,* 88 Hawai'i 251, 256–57, 965 P.2d 793, 798–99 (1998) (quoting *Korean Buddhist Dae Won Sa Temple v. Sullivan,* 87 Hawai'i 217, 229–30, 953 P.2d 1315, 1327–28 (1998)).

### C. *Admission Of Evidence*

■ [D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue.... *Kealoha v. County of Hawaii,* 74 Haw. 308, 319, 844 P.2d 670, 676, *reconsideration denied,* 74 Haw. 650, 847 P.2d 263 (1993).

*State v. Christian,* 88 Hawai'i 407, 417–18, 967 P.2d 239, 249–50 (1998) (quoting *Tabieros v. Clark Equip. Co.,* 85 Hawai'i 336, 350–51, 944 P.2d 1279, 1293–94 (1997)) (some brackets and ellipsis points added and some in original).

"Evidentiary decisions based on HRE Rule 403, which require a 'judgment call' on the part of the trial court, are reviewed for an abuse of discretion." [*State v. Arceo,* 84 Hawai'i 1, 11, 928 P.2d 843, 853 (1996)] (quoting *Walsh v. Chan,* 80 Hawai'i 212, 215, 908 P.2d 1198, 1201 (1995)). "HRE 404 represents a particularized application of the principle of HRE 403 (see Commentary to HRE 404), and we will employ the same abuse of discretion standard of review." *Id.* (quoting *State v. Alston,* 75 Haw. 517, 538, 865 P.2d 157, 168 (1994)).

*State v. Richie,* 88 Hawai'i 19, 37, 960 P.2d 1227, 1245 (1998) (footnotes omitted).

5. HRS § 702–207 (1993) provides:
 **Specified state of mind applies to all elements.** When the definition of an offense specifies the state of mind sufficient for the commission of that offense, without distinguishing

### III. *DISCUSSION*

A. *The Circuit Court Reversibly Erred By Failing To Instruct The Jury Regarding The Intentional State of Mind Requisite To Proving, Beyond A Reasonable Doubt, The Valuation Element Of The Offense Of Theft In The Second Degree.*

In *State v. Mitchell,* 88 Hawai'i 216, 965 P.2d 149 (App.1998), the Intermediate Court of Appeals (ICA) analyzed the elements of theft in the second degree as follows:

Generally, under HRS § 708–830 (1993):

**Theft.** A person commits theft if the person does any of the following:

(1) Obtains or exerts unauthorized control over property. A person obtains, or exerts control over, the property of another with *intent* to deprive the other of the property.

(Emphasis added.)

Pursuant to HRS § 702–207 (1993),[5] the state of mind of "intent" applies to each material element of the offense. *See also* HRS § 702–204 (1993) (providing that "a person is not guilty of an offense unless the person acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to each element of the offense"); HRS § 702–205 (1993) and commentary (providing that the state-of-mind element specified for the offense applies to the conduct, attendant circumstances, and results of conduct).

The elements of second degree theft [—as charged in the present case—] are outlined in HRS § 708–831, in relevant part, as:

**Theft in the second degree.** (1) A person commits the offense of theft in the second degree if the person commits theft:

(a) Of property from the person of another;

among the elements thereof, the specified state of mind shall apply to all elements of the offense, unless a contrary purpose plainly appears.

(b) Of property or services the value of which exceeds $300;....

The material elements of theft in the second degree [—as charged in the present case—] are, therefore, that the defendant *intended* to: (1) obtain or exert unauthorized control over the property of another, HRS § 708–830(1); (2) deprive the other of his or her property, *id;* and (3) deprive another of property that exceeds $300 in value (valuation element). HRS § 708–831(1)(b). The State must prove each of these elements beyond a reasonable doubt in order to make a prima facie showing of theft. HRS § 701–114 (1993);[6] *State v. Gaylord*, 78 Hawai'i 127, 136, 890 P.2d 1167, 1176 (1995) (holding the same in regards to HRS § 708–830(6)(a) (1993)).

. . . .

In regard to the third, valuation element, the defendant's state of mind is critical. Under Hawai'i theft provisions, which follow the Model Penal Code (MPC), *see* HRS § 708–830–833 commentary, the defendant's state of mind with regard to the value of the property determines the grade of the offense, and thus also determines the sentencing that will be imposed upon him or her. *Id.;* MPC § 223.1(3)(a) and (c) comment on grading of theft provisions (Official Draft 1980).

As the MPC notes, "The amount involved in a theft has criminological significance *only if it corresponds with what the thief expected or hoped to get.* To punish on the basis of actual harm rather than on the basis of foreseen or desired harm is to measure the extent of criminality by fortuity." MPC § 223.1(3)(c) comment on grading of theft provisions (emphasis added). This is primarily because:

Putting a ceiling on punishment of petty theft accords with the almost universal present practice and with popular feeling. The ordinary individual feels lesser repugnance to the taking of smaller rather than larger amounts. Thus, the petty thief evinces a lesser departure from normal standards from respect for others' property; he [or she] is presumably not as hardened or dangerous. Shorter sentences should be sufficient to deter those who have not as much to gain. On the other hand, longer sentences are called for in the case of offenders who realize greater sums. Escalation of penalty according to amount stolen decreases the incentive for crime that greater profits might induce.

*Id.* at § 223.1(3)(a) comment on grading of theft provisions.

In order to establish a defendant's culpability for second degree theft, therefore, *the State must prove that a defendant intended to steal the statutorily defined value, in this case $300, of the alleged property or services.*

*Id.* at 222–23, 965 P.2d at 155–56 (some footnotes in original and some omitted) (some emphasis added and some in original).

We adopt the ICA's analysis. The language of HRS § 708–830 is plain and unambiguous.[7] In this connection, and notwithstanding the circuit court's mistaken belief that the "legislative intent in shoplifting ... was not to apply the state of mind to value," the terms of HRS § 708–830 contrast sharply with the statute at issue in *State v. Buch*, 83 Hawai'i 308, 926 P.2d 599 (1996), in which a majority of this court held that HRS § 707–732(1)(b) (1993) imposed strict liability

6. HRS § 701–114 (1993) provides in relevant part:

**Proof beyond a reasonable doubt.** (1) Except as otherwise provided ..., no person may be convicted of an offense unless the following are proved beyond a reasonable doubt:
(a) Each element of the offense;
(b) *The state of mind required to establish each element of the offense;*
(c) Facts establishing jurisdiction;
(d) Facts establishing venue; and

(e) Facts establishing that the offense was committed within the time period specified in section 701–108.
(2) In the absence of the proof required by subsection (1), the innocence of the defendant is presumed.
(Emphasis added.)

7. Although Mitchell was charged with second degree theft by way of the provisions of HRS § 708–830(1), the language of HRS § 708–830(8)(a), *see supra* note 1, is equally plain and unambiguous.

with respect to the attendant circumstance of the age of a victim of a sexual assault in the third degree. *Id.* at 316, 926 P.2d at 607. That statute provides in pertinent part that "[a] person commits the offense of sexual assault in the third degree if . . . [t]he person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person." Thus, analogously to the statute at issue in the instant matter, HRS § 707–732(1)(b) does not expressly specify the requisite state of mind with respect to the relevant attendant circumstance. *Id.* at 317, 926 P.2d at 608. However, the legislative history "unequivocally" indicated that "where the age of the victim [wa]s an element of a sexual offense, the specified state of mind [wa]s not intended to apply to that element." *Id.* at 316, 926 P.2d at 607. Accordingly, relying on HRS § 702–207, which, as we have indicated *supra* at note 5, provides that "[w]hen the definition of an offense specifies the state of mind sufficient for the commission of that offense, without distinguishing among the elements thereof, the specified state of mind shall apply to all elements of the offense, *unless a contrary purpose plainly appears,*" (emphasis added), the *Buch* majority held that, in view of the clearly stated legislative purpose, knowledge of the age of the victim was *not* an element of sexual assault in the third degree. *Id.* at 317–20, 926 P.2d at 608–11.

By contrast, in the present matter, the legislative history specific to HRS ch. 708, pt. IV, entitled "Theft and Related Offenses," appears to be silent as to what state of mind the legislature intended to require with regard to the valuation element of the offense of theft. However, a reading of HRS §§ 708–830(8)(a) and 708–831(1)(b) in pari materia, *see* HRS § 1–16, *supra* section II.B, with HRS §§ 708–801(4) and (5) (1993 & Supp.1998), against the backdrop of HRS §§ 702–204, 702–205, and 702–206 (1993), sheds some light on the subject.

HRS § 702–205 provides:

**Elements of an offense.** The elements of an offense are such (1) conduct, (2) *attendant circumstances,* and (3) results of conduct, as:

   (a) Are specified by the definition of the offense, and

   (b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

(Emphasis added.) In this connection, "value . . . which exceeds $300," for purposes of HRS § 708–831(1)(b) (the second degree theft statute under which Cabrera was charged and of which he was convicted), is an attendant circumstance of the conduct—*i.e.,* the concealment or taking possession of the goods or merchandise of any store or retail establishment—proscribed by HRS § 708–830(8)(a), which defines the form of theft with which Cabrera was charged and of which he was convicted; put differently, "value" in excess of $300.00 is the "attendant circumstance element" of the second degree theft offense, within the meaning of HRS § 702–205. And by virtue of HRS § 702–204, the prosecution must prove that the defendant "acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to each element of the offense," including any specified attendant circumstance.

HRS § 708–801 provides in relevant part:

**Valuation of property.** Whenever the value of property or services is determinative of the class or grade of an offense, or otherwise relevant to a prosecution, the following shall apply:

   . . . .

   (4) When acting *intentionally* . . . with respect to the value of property or services is required to establish an element of an offense, the value of property or services shall be prima facie evidence[8] that the defendant *believed* . . . the property or services to be of that value. . . .

   (5) When acting *intentionally* . . . with respect to the value of property or services is required to establish an element of an offense, it is a defense, which reduces the class or grade of

---

8. *See supra* note 4.

the offense consistent with the defendant's state of mind, that the defendant *believed* the valuation of the property or services to be less....

(Emphases added.) In this regard, HRS § 702-206(1)(b) provides that "[a] person acts *intentionally* with respect to attendant circumstances when he is aware of the existence of such circumstances or *believes* or hopes that they exist." (Emphases added.) Accordingly, pursuant to the statutory canon of construction of "in pari materia," as codified in HRS § 1-16, *see supra* section II.B, the express terms of HRS §§ 708-801(4) and (5) would seem to establish that the legislature intended unambiguously that the requisite state of mind regarding the attendant circumstance of "value," for purposes of HRS §§ 708-830(8)(a) and 708-831(1)(b), *see supra* note 1, is "intent."

Moreover, even if there were some doubt or ambiguity with respect to the requisite state of mind, we have recognized that

"[a]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." [*Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1752-53, 64 L.Ed.2d 381 (1980).] "This policy of lenity means that the [c]ourt will not interpret a [state] criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what [the legislature] intended." *Simpson v. United States*, 435 U.S. 6, 15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70 (1978).

*State v. Soto*, 84 Hawai'i 229, 248-49, 933 P.2d 66, 85-86 (1997) (quoting *State v. Kaakimaka*, 84 Hawai'i 280, 292, 933 P.2d 617, 629 (1997) )(some brackets added and some in original). Hence, insofar as HRS § 708-830(8)(a) expressly recites that "*intent* to defraud" (emphasis added) is the state of mind requisite to the commission of theft by "shoplifting," and in light of HRS § 702-207, which provides in relevant part that "the specified state of mind shall apply to all elements of the offense, unless a contrary purpose plainly appears," *see supra* note 5, it would follow, in any event, that the "intentional" state of mind attaches to all of the elements of the offense, including the attend-

ant circumstance of the value of the property taken. This is precisely the conclusion that the *Mitchell* court reached with respect to second degree theft, in violation of HRS §§ 708-830(1) and 708-831(1)(b). 88 Hawai'i at 222-23, 965 P.2d at 155-56 ("Pursuant to HRS § 702-207 (1993), the state of mind of 'intent' applies to each material element of the offense.... In order to establish a defendant's culpability for second degree theft, therefore, the [prosecution] must prove that a defendant intended to steal the statutorily defined value, in this case $300, of the alleged property or services." (Footnote omitted.)).

■ Accordingly, we hold that, in order to convict a defendant of theft in the second degree, in violation of HRS §§ 708-830(8)(a) and 708-831(1)(b), the prosecution must prove beyond a reasonable doubt that the accused intended to steal property or services valued in excess of $300.00.

■ The circuit court's instructions in the present matter did not adequately so instruct the jury. While it is true that the only state of mind about which the jury was instructed was "intentional," the facial application of that state of mind in Jury Instruction No. 19 exclusively to the "intent to defraud" portion of the charged second degree theft offense may well have misled the jury into believing that the prosecution was not required to prove the same requisite state of mind with respect to the value of the stolen property. Inasmuch as there is a reasonable possibility that this error contributed to Cabrera's conviction of second degree theft, the judgment against him must be vacated and the matter remanded for a new trial.

B. *The Circuit Court Did Not Err In Allowing The Loss Prevention Officers To Testify That They "Recognized" Cabrera.*

■ Cabrera further asserts that the circuit court erred in allowing the loss prevention officers to testify that they "recognized" Cabrera when he entered J.C. Penney because that evidence should have been excluded pursuant to the provisions of HRE Rules 403 and 404(b). *See supra* notes 2 and 3. Cabrera's contention is not well taken. We review the circuit court's ruling pursuant to

HRE Rules 403 and 404 for an abuse of discretion, and " '[t]he trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.' " *Arceo*, 84 Hawai'i at 11, 928 P.2d at 853 (quoting *State v. Ganal*, 81 Hawai'i 358, 373, 917 P.2d 370, 385 (1996) (quoting *State v. Furutani*, 76 Hawai'i 172, 179, 873 P.2d 51, 58 (1994))). While a jury *might* have inferred from the loss prevention officers' testimony that the officers "recognized" Cabrera from prior shoplifting cases within the store, it would not have been beyond "the bounds of reason" for the circuit court to have determined that the risk of the jury inferring prior bad acts was not substantial. Likewise, it would not have been beyond "the bounds of reason" for the circuit court to conclude that the probative value of the evidence, insofar as it established a basis for the loss prevention officers' actions, outweighed any possible prejudice to Cabrera. In light of the broad discretion accorded to a trial court in making evidentiary "judgment calls," *see State v. Bates*, 84 Hawai'i 211, 228, 933 P.2d 48, 65 (1997), we hold that the circuit court did not err in allowing the loss prevention officers to testify that they commenced surveillance of Cabrera because they "recognized" him.

### C. *Cabrera Was Not Entitled To A Jury Instruction Regarding Mistake Of Fact.*

" 'Our cases have firmly established that "a defendant is entitled to an instruction on every defense or theory of defense having any support in the evidence, provided such evidence would support the consideration of that issue by the jury, no matter how weak, inconclusive, or unsatisfactory the evidence may be." ' " *State v. Sawyer*, 88 Hawai'i 325, 333, 966 P.2d 637, 645 (1998) (quoting *State v. Kaiama*, 81 Hawai'i 15, 24, 911 P.2d 735, 744 (1996) (quoting *Maelega*, 80 Hawai'i at 178–79, 907 P.2d at 764–65 (citation omitted))); *see also State v. Russo*, 69 Haw. 72, 76, 734 P.2d 156, 158 (1987) (citation omitted). "However, this court has also noted that 'where evidentiary support for [an] asserted defense, or for any of its essential components, is clearly lacking, it would not be error for the trial court to refuse to charge on the issue or to instruct the jury not to consider it.' " *Sawyer*, 88 Hawai'i at 333, 966 P.2d at 645 (quoting *State v. Moore*, 82 Hawai'i 202, 210, 921 P.2d 122, 130 (1996) (citation omitted)) (brackets in original); *see also Russo*, 69 Haw. at 76, 734 P.2d at 158; *State v. Warner*, 58 Haw. 492, 498–99, 573 P.2d 959, 963 (1977).

■ As discussed *supra* in section I, Cabrera admitted at trial that he was aware that he was stealing the property of J.C. Penney, which obviously had *some* value, although he staunchly maintained that he had no knowledge, one way or the other, as to what the property's value was. That being the case, there was no element of the offense of second degree theft, in violation of HRS § 708–831(1)(b), about which Cabrera could have been factually mistaken, so as to "negative[ ] the state of mind required to establish . . . the offense[.]" *See* HRS § 702–218(1) (1993).

We have, of course, noted that HRS § 708–801(5), *see supra* section III.A, would have afforded Cabrera a mitigating defense to second degree theft, thereby "reduc[ing] the class or grade of the offense consistent with [his] state of mind," had he "believed the valuation of the property or services to be less" than it actually was. *See also* HRS § 702–218(2) (1993) (recognizing the defense of "ignorance or mistake of fact" if, *inter alia*, "a law related [to the charged offense] provides that the state of mind established by such ignorance or mistake constitutes a defense"). But, again, Cabrera insisted in his testimony that he had harbored no belief at all regarding the value of the stolen property. That being the case, HRS § 708–801(5) is of no assistance to him.

In light of the foregoing, we hold, on the record developed at trial, that Cabrera was not entitled to a jury instruction regarding mistake of fact.

### IV. *CONCLUSION*

For the reasons set forth above, we reverse Cabrera's conviction and remand this matter to the circuit court for a new trial.