**AMERICAN SAMOA GOVERNMENT, Plaintiff,**

**v.**

**MAELI PITOITUA, aka ISUMU, Defendant.**

High Court of American Samoa
Trial Division

CR No. 33-04

October 17, 2005

Before KRUSE, Chief Justice, LOGOAI, Chief Associate Judge, and ATIULAGI, Associate Judge.

Counsel: For Plaintiff, Don Pitzer, Assistant Attorney General
For Defendant, Aviata F. Fa`alevao, Public Defender

OPINION AND ORDER

## Introduction

Pitoitua Maeli, an inmate at the Territorial Correctional Facility, is charged with first degree murder and first degree assault after taking one inmate's life and another's hand during an altercation at the Tafuna Correctional Facility. Waiving jury trial, the defendant opted for a bench trial which was held September 13-15, 2005.

Independent third-party testimonial accounts of eye-witnesses, together with the substantiating findings of a medical expert, showed beyond a reasonable doubt that late in the afternoon of January 23, 2004, Maeli killed Senetala Lavasi`i after striking the latter about his body with a bush-knife. The critical blow, according pathologist, Dr. Amor Gonsalves, of the LBJ Tropical Medical Center, was a "chopped or hacked wound" to the right side of the decedent's head, the right parieto-occipital area, that exposed "macerated" brain tissue. Dr. Gonsalves confirmed that this sort of wound was consistent with being struck forcefully by an object such as bush-knife. We accept and adopt Dr.

Gonsalves' findings as to the ultimate cause of death.

We are further satisfied that on the same date and around the same time and place, Maeli also swung the same bush-knife at Lomiga Tautalaaso with such force as to completely sever all of Tautalaaso's left hand, but his thumb.

## Discussion

### I. Count I—Murder

Maeli concedes criminal homicide, but argues that: 1) the deliberation element required for first degree murder is lacking, and 2) that he is at best only guilty of manslaughter pursuant to A.S.C.A. § 46.3504. This enactment states that:

> (a) Criminal homicide constitutes manslaughter when:
> (1) it is committed recklessly; or
> (2) a homicide which would otherwise be murder is committed under the influence of *extreme mental or emotional disturbance* for which there is reasonable explanation or excuse; the reasonableness of the explanation or excuse is determined from the viewpoint of a person in the actor's situation under the circumstances as he believes them to be [; or]
> (3) at the time of the killing, he believes the circumstances to be that, if they existed, would justify the killing under 46.3301 et seq., but his belief is unreasonable.

A.S.C.A. § 46.3504 (emphasis added).

■ Other states and territories have manslaughter statutes containing almost identical language to A.S.C.A. § 46.3504[61] and their interpretations are instructive as to when, and under what circumstances the mitigation of extreme mental or emotional disturbance should apply. For example, Guam's manslaughter statute provides that a criminal homicide is manslaughter when a killing that would otherwise be considered murder "is committed under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation or excuse." 9 G.C.A. § 16.50.[62]

---

[61] These statutes virtually repeat verbatim the language of section 210.3 of the Model Penal Code.

[62] 9 GCA § 16.50(a) provides that criminal homicide constitutes manslaughter when:
> (1) it is committed recklessly; or
> (2) a homicide which would otherwise be murder is committed under the influence *of extreme mental or emotional disturbance*

■ Guam, however, has held that the mitigation is not available in situations where the homicide evidenced premeditation or deliberation. *People of Territory of Guam v. Quichocho*, 973 F.2d 723 (9th Cir. 1992). In *Quichocho*, the defendant appealed after being convicted of aggravated murder, arguing that the trial court erred in failing to properly instruct the jury on the above manslaughter defense/mitigation. *Id.* at 724. On appeal, the Ninth Circuit affirmed, holding that jurors had no reason to consider the issue. *Id.*

■ The Ninth Circuit's holding turned on two key issues. First, that Quichocho was convicted of *aggravated* murder (in Guam, aggravated murder is a homicide committed intentionally with premeditation).[63] Second, the panel conducted a thorough review of Model Penal Code § 210.3, which explained that "extreme mental and emotional disturbance" is a modified version of the traditional notion of "passion and provocation." As such, the statute takes into account the actor's subjective state of mind. *Id.*, citing MODEL PENAL CODE § 210.3, Commentary at 62-64 (Proposed Official Draft 1963). Like common law "passion and provocation," the Ninth Circuit held that the Model Penal Code notion of "extreme mental and emotional disturbance" was entirely at odds with premeditation and deliberation. *Id.* "Extreme mental or emotional disturbance," the court held, presupposes a degree of emotional agitation that is inconsistent with premeditation, calculation, or the exercise of self-control. *Id.*

In other words, a finding of deliberation is mutually exclusive to the mitigation claim. You are either deliberate, or you are agitated and/or emotionally disturbed to the point of losing self-control, but you cannot be both at the same time.

Because the *Quichocho* jury found the premeditation and deliberation elements of aggravated murder had been satisfied, it could not have found that the defendant acted under an extreme mental or emotional disturbance. Because the jury had no reason to consider the question, the court's omission in instructing the jury on the issue was moot. *Id.* at 726.

■ Similarly, in Hawaii, premeditation or deliberation necessarily cancels out the extreme emotional distress/disturbance mitigation. Hawaii's murder to manslaughter mitigation statute is identical to A.S.C.A. § 46.3504. It provides that murder can be reduced to manslaughter if:

> the defendant was, at the time he caused the death of the other person, under the influence of extreme mental or emotional

---

for which there is reasonable explanation or excuse.

[63] *See,* 9 G.C.A. § 16.30

disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be.

HRS § 707-702(2) (Supp.1991).

■ According to the Hawaii courts, the statute's roots are lodged in the common law where a person who "kill[ed] another without malice aforethought, under the sudden impulse of passion, excited by provocation or other adequate cause, by the party killed, of a nature tending to disturb the judgment and mental faculties, and weaken the possession of self-control of the killing party, [was] not guilty of murder, but manslaughter." *State v. Russo*, 734 P.2d 156 (Haw. 1987). Like Guam, Hawaii's manslaughter statute was taken almost verbatim from Model Penal Code § 210.3.

■ Interpreting this statute, Hawaii courts held that "extreme emotional disturbance is the emotional state of an individual who ... has an extreme emotional reaction to [extremely unusual and overwhelming stress], as a result of which there is a loss of self-control and reason is overborne by intense feelings." *State v. Matias*, 840 P.2d 374(Haw. 1992) (internal quotations omitted). In other words, the actor must demonstrate a lack of self-control and must evidence being overborne by intense emotions.

■ Hawaii's case law leaves no doubt that the question of a killer's self-control, or lack of it, at the time of the killing is a significant, even determining, factor in deciding whether the killer was under the influence of an extreme emotional disturbance such that his conduct would fall under HRS § 707-702(2). In *State v. Pinero*, 778 P.2d 704 (Haw. 1989), the court commented on HRS § 707-702(2) and indicated that the loss of self-control on the part of the killer was at the core of the court's definition. They stated the offense "has been characterized as 'voluntary manslaughter [because it] involves the intentional [or knowing] killing of another while under the influence of a reasonably induced [extreme mental or] emotional disturbance ... *causing a temporary loss of normal self-control*." 778 P.2d at 714 (emphasis added) (alteration in original) (citation omitted).

Thus, in Hawaii, like in Guam, evidence of deliberation, premeditation, or self-control, renders the manslaughter mitigation claim unavailable.

■ We find the experience of these jurisdictions to be persuasive and accordingly hold, as has Hawaii and Guam, that where the evidence supports a finding of deliberation or the exercise of self-control, then A.S.C.A. § 46.3504 does not apply.

■ In American Samoa, deliberation means that the defendant acts

"with either the intention or the knowledge that he will kill another human being . . . when the intention or knowledge precedes the killing by an appreciable length of time to permit reflection." A.S.C.A. § 46.3502(b).

Here, the evidence was abundantly clear that Maeli had the intention and knowledge that he will kill the decedent. At the root of the tragedy was a rivalry between Maeli and the decedent for the affections of another female inmate, Salina Ropati, whom Maeli regarded, and does so to this day, as his wife. According to Ropati, she and Maeli had, prior to the incident in question, twice consummated their defacto relationship as husband and wife by having sex.[64] At sometime thereabouts, however, the decedent also tried to court Ropati by propositioning her at every available opportunity, exhorting Ropati to drop Maeli and to have him as her paramour. According to Ropati, she consistently rebuffed the decedent's overtures by declaring to him her love for Maeli. Subsequently, Maeli got to learn of the decedent's covetous attempts, and as Maeli candidly admitted on the stand, jealousy got the better of him. Maeli gave as his reason for the attack on the decedent, was his wounded or hurt feelings.

Evincing intent and knowledge on the part of the defendant are the following: after finding out about the decedent's advances toward his girlfriend, Maeli announced that he was going to kill the decedent and himself later that day, after he, the defendant, returned from his hospital appointment, as established by the credible testimony of Lomiga Tautalaaso. The latter considered this uttered threat serious enough to report it to Officer Sianava Nu`usila, who confirmed receiving such a report from Tautalaaso. After the cooling off period involving the defendant's hospital visit, Officer Nu`usila summoned both the decedent and Maeli, who reassured both Officer Nu`usila and the decedent that there was nothing further between the two of them. Another cooling off opportunity arose, during which the defendant managed to secure a long and heavy bush-knife (in a prison setting) which he strategically concealed in his clothing, not only from the decedent, but apparently from a number of other witnesses who saw the decedent walk with Maeli toward the main office, passing in front the women's cell block where Ropati was housed. Intent and knowledge was also clearly evinced by Maeli's own actions, immediately prior to the assault, when he ostentatiously lifted his hand and pointed his index finger to the women's cell block, as he and the decedent approached in front of the same, and then pointing again directly at the decedents head, as testified to and demonstrated by Lomiga Tautalaaso, immediately before the defendant struck the first blow directly at the decedent's head.

---

[64] How prison circumstances allowed conjugal access was not revealed on the evidence.

And intent to kill, as well as knowledge, was clearly subsequently corroborated by the viciousness and force of the first blow of the bush-knife to Senetala Lavasi`i's head. The defendant's design at that time was unequivocally clear, a fatal blow at close range, in circumstances where the decedent did not even have the chance to see what was coming; the decedent was effectively ambushed. The continued viciousness of the attack with the bush-knife on the fallen and prostrate form of the decedent—as credibly testified to by inmates Tautalaaso, Heki Toefo`i, and Ropati, as well as by Officers Sianava Nu`usila, Junior Utuga, and Alfred Te'o—is also clearly corroborative of a preconceived intent to kill on the defendant's part. Finally, the defendant's equally forceful and vicious attacks on Officer Nu`usila and then on Lomiga Tautalaaso, after their apparent attempts to intervene, also corroborates the defendant's intention to kill the decedent (Maeli was not thwarted in his purpose and plan to kill Senetala Lavasi`i).

The events of January 23, 2004—threatening to kill the victim followed by separate cooling-off periods, securing the knife, seeking out the victim again and eventually ambushing him—clearly evidenced deliberation and self-control. These were not the actions of a person who was *temporarily* overcome by intense emotions causing a *temporary* loss of self-control. Thus, the manslaughter mitigation provided by A.S.C.A. § 46.3504(a)(2) is inapplicable in this case.

We conclude Murder in the First Degree, and find the defendant Pitoitua Maeli guilty thereof as charged.

## II. Count II—Assault

With Count II, Maeli similarly concedes guilt to the lesser offense of Assault in the Second Degree, under A.S.C.A. § 46.3521. *See* Defendant's Trial Brief at p.9. As with Count I, Maeli also seeks to invoke similar "extreme emotional disturbance" mitigation proviso contained in § 46.3521(1-3)(a)(A), and/or "justification" under subparagraph (B) of the same enactment.[65] Under either scenario, the

---

[65] A.S.C.A. § 46.3521—Assault in the 2nd degree.
(a) A person commits the crime of assault in the 2nd degree if:
(3) he attempts to kill or cause serious physical injury or causes serious physical injury under circumstances that would constitute assault in the 1st degree under 46.3520, but:
(A) acts under the influence of extreme emotional disturbance for which there is a reasonable explanation or excuse; the reasonableness of the explanation or excuse is determined from the viewpoint of an ordinary person in the actor's situation under the circumstances as the actor believes them to be; or
(B) at the time of the act, he believes the circumstances to be that, if they existed, would justify killing or inflicting serious

defendant has the burden of injecting the issue. A.S.C.A. § 46.3521(b).

The whole basis of Maeli's claim to mitigation under the extreme emotional disturbance and justification headings was his testimony to the effect that as he was falling down at one point during the altercation, with rocks flying all around from other inmates on the playing field, he caught a glimpse of an advancing Tautalaaso about to throw a rock at him; and that as he fell, he managed to "stab" at Tautalaaso with the bush knife.

We did not find Maeli to be credible and accordingly found his claim entirely unbelievable. To the contrary, we are convinced that Tautalaaso was attacked not in self defense, as claimed, but because he was getting in Maeli's way with the decedent, just as Officer Nu'usila was also attacked beforehand by Maeli in a similar fashion when the latter attempted to intervene. But for his quick evasive action, coupled with Tautalaaso's fortuitous arrival on the scene as well as the distraction caused by other inmates on the playing field hurling rocks at the defendant, Officer Nu'usila managed to escape unharmed. Tautalaaso, however, was not so fortunate when he lost the hand that he had held up to protect his head.

Moreover, the condition of Tautalaaso's right-hand shortly after the time of incident, as depicted by the photographic exhibits, and its condition as subsequently shown to us at trial, starkly contradicts a mere stabbing claim with the bush knife. His hand was cleanly severed because of the ferocity of Maeli's cutting stroke with the bush-knife. The exact same ferocity visited the decedent and Officer Nu'usila. We find nothing defensive at all with the defendant's attack on Tautalaaso.

Accordingly, we find the defendant guilty as charged of the offense of Assault in the First Degree (with a deadly weapon or dangerous instrument). Judgment will enter accordingly. It is so ordered.

physical injury under the provisions of 46.3301 et seq., but his belief is unreasonable.